199 F.3d 867 (6th Cir. 1999)
 STACEY BARKER, PETITIONER-APPELLANT,
v.
JOAN YUKINS, IN HER OFFICIAL CAPACITY AS WARDEN OF THE SCOTT CORRECTIONAL FACILITY, ET AL., RESPONDENTS-APPELLEES.
 No. 98-1237
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Argued: August 11, 1999
Decided: December 15, 1999
 
 [Copyrighted Material Omitted]
 Appeal from the United States District Court for the Eastern District of Michigan at Detroit. No. 97-71292--Gerald E. Rosen, District Judge.
 Stuart G. Friedman (argued and briefed), Ann Arbor, MI, for Petitioner-Appellant.
 Diane L. Galbraith (argued and briefed), Office of the Attorney General, Habeas Corpus Division, Lansing, MI, for Respondents-Appellees.
 Keith and Ryan, Circuit Judges; HULL,* District Judge.
 OPINION
 Damon J. Keith, Circuit Judge.
 
 
 1
 Petitioner Stacey Barker appeals from a district court judgment denying her petition for a writ of habeas corpus. Barker contends that she was denied her constitutional right to a jury trial when the Michigan Supreme Court found that an erroneous jury instruction given during her state court trial was harmless. For the reasons discussed below, this panel agrees, and reverses the district court's denial of the writ. We grant a conditional writ of habeas corpus, which shall become unconditional unless the State of Michigan commences trial proceedings within 180 days of this opinion.
 
 I. BACKGROUND
 Factual Background
 
 2
 Petitioner Stacey Barker worked as a companion for a resident of a senior citizens' complex. During her frequent visits to the senior citizens' complex, Barker met and began a friendship with another resident, 81-year old Frank Madsen.
 
 
 3
 Barker admits to killing Madsen on the evening of November 5, 1986, but claims she did so in self defense. Barker testified that Madsen called her on November 5th and asked her to visit. While they were watching television, Barker testified that Madsen began touching her and pulling on her clothing. Barker stated that she repeatedly asked Madsen to stop, but he refused to do so. Barker became frightened by Madsen's behavior. In an effort to end the attack, Barker grabbed a small wooden statute and struck Madsen on the head several times. Unswayed by these blows, Barker testified that Madsen persisted in his attack by grabbing her harder, pulling on her clothing and attempting to kiss her. At some point during the struggle, Madsen backed Barker into the kitchen. Barker grabbed a knife which was lying around and repeatedly stabbed Madsen.[1] Madsen subsequently died of his injuries.
 
 Procedural Background
 
 4
 Petitioner Barker was first tried in state court on first degree murder charges in October of 1987. The jury was unable to reach a verdict. Barker was retried beforea different jury in November of 1987, and was ultimately convicted of first degree murder for the death of Madsen. She was sentenced to a term of life imprisonment without the possibility of parole.
 
 
 5
 Barker appealed her conviction to the Michigan Court of Appeals, rasing three assignments of error. People v. Barker, 446 N.W.2d 549 (Mich. Ct. App. 1989). Only one of those assignments of error, whether the trial court erred in refusing to specifically instruct the jury that Petitioner was entitled to use deadly force to resist an imminent rape, is relevant for purposes of the instant appeal.[2] As to that assignment of error, the Michigan Court of Appeals concluded that the trial court's failure to deliver the requested instruction was not erroneous. See id. at 551-52. The court reasoned that the instruction the trial court did provide adequately instructed the jury that a defendant may lawfully use lethal force in self defense if the person honestly believes she is in danger of death or serious bodily injury. See id. at 552. The court further concluded that a defendant is not entitled to have the general self defense instruction tailored to specifically instruct the jury that deadly force may be used to resist a particular type of assault, in this case, a rape. See id. at 551-52. Thus, the court upheld Barker's conviction.
 
 
 6
 On review, the Michigan Supreme Court disagreed with the Michigan Court of Appeals and found that the trial court did err in refusing to instruct the jury that Barker would be entitled to use force, even deadly force, if she believed she was about to be raped. People v. Barker, 468 N.W.2d 492, 493 (Mich. 1991). The Michigan Supreme Court, however, found that the error was harmless because no reasonable juror would have believed Petitioner's claim of self defense. See id. at 493-94. The Michigan Supreme Court found it persuasive that Madsen was 81 years old, walked with a cane, and was described as unsteady on his feet, while Barker was in her early twenties, was five feet seven inches tall and weighed 170 pounds. See id. at 494. The court also found it significant that Madsen suffered ten blows to the head and was stabbed thirty two times. See id. On the basis of that evidence, the court concluded that no reasonable juror could have believed such force was necessary to prevent a rape by the "enfeebled" victim. See id.
 
 
 7
 Subsequent to the Michigan Supreme Court's ruling upholding her conviction, Petitioner Barker filed a petition for a writ of habeas corpus in the district court on March 27, 1997. The district court, adopting a report and recommendation submitted by a magistrate judge, denied Barker's petition for habeas relief on January 30, 1998.
 
 
 8
 On August 12, 1998, this Court granted Barker's motion for a certificate of appealability, limited to the question of whether Ms. Barker's due process rights were violated by failing to instruct the jury that she had a right to use lethal force to resist a sexual assault. The motion was denied as to the other issues raised by Petitioner.
 
 II. DISCUSSION
 
 9
 Applicability of the Antiterrorism and Effective Death Penalty Act
 
 
 10
 An appellate court reviews a district court's decision to deny or grant a writ of habeas corpus de novo, but it reviews the district court's factual findings only for clear error. See McQueen v. Scroggy, 99 F.3d 1302, 1310 (6th Cir. 1996), cert. denied, 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1977).
 
 
 11
 We must further consider the substantive standards utilized when reviewing state court decisions which are challenged by filing a petition for a writ of habeas corpus. The district court, by adopting the report and recommendation of the magistrate judge, found that Petitioner Barker's claim for habeas relief should be analyzed pursuant to the standards established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a petition for writ of habeas corpus may only be granted where the state court proceedings: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision which was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. See 28 U.S.C. § 2254(d).
 
 
 12
 Petitioner argues on appeal, as she did below, that this matter is not governed by the requirements established by AEDPA.[3] Since her state criminal appeals were completed prior to the passage of AEDPA, Petitioner Barker contends that applying AEDPA to her claims would result in an improper, retroactive application of new legislation, and would unlawfully delegate the constitutional adjudication power of this federal appellate court to state court.
 
 
 13
 It is now well settled that AEDPA applies to all habeas petitions filed on or after its April 24, 1996 effective date. See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997) (holding that the new provisions of chapter 153 [which include § 2254(d)] generally apply only to cases filed after AEDPA became effective); see also Harpster v. Ohio, 128 F.3d 322, 326 (6th Cir. 1997), cert. denied, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998) ("Because petitioner filed his application for a writ of habeas corpus on July 26, 1996, after the effective date of AEDPA, the revised § 2254(d) governs our inquiry...."); Herbert, 160 F.3d at 1134 ("The AEDPA applies to all habeas cases filed after April 24, 1996.").
 
 
 14
 Clearly, then, the fact that Barker's state criminal appeals were completed prior to the effective date of AEDPA is of absolutely no consequence in ascertaining whether AEDPA is or is not applicable. Rather, the determining factor is whether Barker's petition for habeas relief was filed before or after AEDPA's effective date. Since Barker filed for a writ of habeas corpus on March 27, 1997, well after the April 24, 1996 effective date of AEDPA, the district court properly concluded that the standards set forth in AEDPA are applicable to Barker's habeas.
 
 Analysis of Petitioner's Habeas Claim
 
 15
 Over defense counsel's objection, the trial court delivered a general instruction on the issue of self defense which informed the jury that a defendant is entitled to use force, even deadly force, if the defendant believed she was in danger of death or serious bodily harm. Petitioner's counsel had requested, but was denied, that the instruction specifically inform the jury, as required by Michigan law, that the use of deadly force is lawful where one is in danger of death or grave bodily harm, including a sexual assault. See People v. Heflin, 456 N.W.2d 10, 22-23 (1990) (finding that where there is an evidentiary basis, a court must instruct the jury that force, including deadly force, may be used to repel an imminent sexual assault). The Michigan Supreme Court, citing to its decision in Heflin, found that the trial court erred when it failed to instruct the jury that a defendant may lawfully use force, including deadly force, to repel an imminent sexual assault. Barker, 468 N.W.2d at 493. However, the Michigan Supreme Court proceeded to conclude that such an error was harmless. Id. Thus, theissue raised by Petitioner Barker's habeas petition is whether, under § 2254(d), the Michigan Supreme Court's finding of harmless error was contrary to, or involved an unreasonable application of, federal law. We find that it was unreasonable, and reverse the district court's ruling to the contrary.
 
 
 16
 There has been serious confusion among the circuits as to what constitutes an unreasonable application of federal law, and, consequently, several of our sister circuits have adopted varying standards of interpretation. See, e.g., O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998) (finding that for the writ to issue, the state court decision must be so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes); Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997) (holding that an unreasonable application of law occurs only when a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists). The Sixth Circuit has recently clarified what constitutes an "unreasonable application" under 2254(d) within its jurisdiction. Adopting a standard which blends both the First Circuit's and the Fifth Circuit's approaches, this Court determined that, as a general rule, the "unreasonableness of a state court's application of clearly established Supreme Court precedent will not be 'debatable among reasonable jurists,' if it is'so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.'" Nevers v. Killinger, 169 F.3d 352, 362 (6th Cir.) (internal citations omitted), cert. denied, -- U.S. --, 119 S.Ct. 2340, -- L.Ed.2d - (1999). Thus, in the Sixth Circuit, a state court's application of federal law is unreasonable and a writ may issue only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes. Id. at 371.
 
 
 17
 With the general habeas principles in mind, the question now becomes how to apply the basic habeas test announced in Nevers to the specific issue before us, namely whether the Michigan Supreme Court's finding of harmless error involved an unreasonable application of federal law. Fortunately, Nevers is also instructive on this question, as the Nevers court framed § 2254(d)'s general "unreasonable application" standard within the harmless error context.
 
 
 18
 [W]hen the issue before the federal habeas court is the state court's finding of harmless error... [the] test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict,' [and] it is the habeas petitioner's burden to demonstrate that the trial error resulted in 'actual prejudice.' If the petitioner is able to make that showing, he will surely have demonstrated that the state court's finding that the error was harmless beyond a reasonable doubt... was outside the realm of plausible credible outcomes, and therefore resulted from an unreasonable application of Chapman [v. California][4].
 
 
 19
 Id. at 371-372 (internal citations omitted).
 
 
 20
 Hence, Petitioner Barker must demonstratethat the district court's failure to specifically instruct the jury that she was justified in using deadly force to resist a rape had a substantial and injurious effect or influence in determining the jury's verdict and resulted in actual prejudice. If Barker can make this showing, Nevers dictates that she will have satisfied the "unreasonable application" standard required by § 2254(d) of AEDPA and would be entitled to habeas relief.[5]
 
 
 21
 We find that the state trial court's error in failing to specifically instruct the jury that Barker would have been justified in using deadly force to stop an imminent rape had a substantial and injurious influence effect in determining the jury's verdict and resulted in actual prejudice to Petitioner Barker. As best explained by Justice Marilyn Kelly (then of the Michigan Court of Appeals and currently on the Michigan Supreme Court), the standard instruction on self defense simply states that one is entitled to use deadly force when one is in danger of death or great bodily harm. Barker, 446 N.W.2d at 553. This
 
 
 22
 leaves the door open for a juror to decide that forcible rape in a given case would have caused neither death nor great bodily harm. The juror could then reasonably conclude that the accused was not entitled to kill the rapist to prevent the rape. The instructions must inform the jury explicitly that, if it reasonably appeared necessary to the person assailed, she was entitled to use deadly force to repel a rapist. Id.
 
 
 23
 Of course, we have no way of knowing what effect the general self defense instruction actually had upon the jurors evaluating Barker's guilt or innocence. We have no way of definitively knowing whether, on the basis of the general self defense instruction, any of the jurors did in fact reject Barker's claim of self defense because that juror believed Madsen's attack would not have lead to death or great bodily injury. But we are certain that the general self defense instruction gave the jurors the latitude to believe, on the one hand, that Barker was resisting a rape, yet on the other hand question whether the rape led to death or serious bodily injury. This is sufficient to raise grave doubt as to whether the general self defense instruction created a substantial and injurious influence on the verdict. See O'Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995).
 
 
 24
 Only if a federal habeas court can say with certainty that a trial error had little to no impact on the judgment, should the judgment stand. See id. at 435-38, 115 S.Ct. at 994-995. In this matter, the only thing of which this court is certain is that the erroneous jury instruction left the door wide open. A reasonable juror could have very well walked through the door and rejected Barker's claim for self defense because that juror believed that Madsen's assault would not have led to death or serious bodily injury, thereby resulting in a substantial and injurious influence on the verdict. Since there is grave doubt as to whether the erroneous jury instruction created a substantial and injurious influence on the verdict, the error was not harmless. Accordingly, then, the Michigan Supreme Court engaged in an unreasonable application of Chapman's harmless error test, and under § 2254(d), a writ of habeas corpus should issue.
 
 
 25
 We further believe that the Michigan Supreme Court improperly invaded the province of the jury in determining that, although the general self defense instruction was erroneous in Barker's case, the error was harmless because no reasonable juror could have believed that the force used by Barker was necessary to prevent rape by an 81-year old "enfeebled" man. The Sixth Amendment and the Due Process clause guarantee a defendant's constitutional right to a trial by jury. As the Supreme Court has recognized, the Sixth Amendment protects the defendant's right to trial by an impartial jury, which includes "as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'" Sullivan v. Louisiana, 508 U.S. 275, 277, 113 S.Ct. 2078, 2080, 124 L.Ed.2d 182 (1993). This right is further interpreted as prohibiting judges from weighing evidence and making credibility determinations, leaving these functions for the jury. See, e.g., United States v. United States Gypsum Co., 438 U.S. 422, 446, 98 S.Ct. 2864, 2878, 57 L.Ed.2d 854 (1978) (holding that a jury instruction which effectively took from the jury the issue of intent improperly invaded the jury's factfinding function); Herrington v. Edwards, No. 97-3542, 1999 WL 98587, at *3 (6th Cir. Jan. 26, 1999) (unpublished disposition) ("The court must not dictate the outcome [of the proceedings]. If it does so, it has invaded the province of the jury protected by the Sixth Amendment and the Due Process Clause."). However, that is precisely what the Michigan Supreme Court did by finding that the erroneous jury instruction was harmless because no reasonable juror would have believed Barker's claim of self defense. See Barker, 468 N.W.2d at 494. First, the Michigan Supreme Court asserted that because the victim received ten blows to the head and was stabbed thirty two times, no reasonable juror would have believed that such force was necessary to resist a sexual assault by an "enfeebled" victim. See id. However, there was sufficient evidence in the record which might have supported rational conclusions to the contrary. In particular, Barker's testimony might support an inference that she stabbed the victim in such a frenzy because he persisted in his attack despite her struggle and numerous protests. (J.A. at 188-95). Yet, the Michigan Supreme Court must have wholly discredited this testimony in arriving at its conclusion that the amount of force used was unjustified. Similarly, the court's conclusion that the victim was "enfeebled" rejects testimony to the contrary which established that although the victim walked with a cane, he was "a strong man, a big man." (J.A. at 480).
 
 
 26
 Hence, it is apparent to this panel that the Michigan Supreme Court's determination that the erroneous jury instruction was harmless necessarily means that the court believed some evidence but discredited other evidence. This, however, it cannot do and remain in compliance with our constitutional guarantees. It is neither the proper role for a state supreme court, nor for this Court, to stand in the place of the jury, weighing competing evidence and deciding that some evidence is more believablethan others. Rather, it is for the jury, with the proper self defense instruction, to decide whether the amount of force was justifiable or unjustifiable. Similarly, it is for the jurors to determine whether they believed the victim was enfeebled, or was instead capable of such an assault. Only the jury has the responsibility of arriving at a final determination of Barker's guilt or innocence, and a state supreme court cannot usurp this role.
 
 
 27
 During oral arguments, counsel for Respondents argued that Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), binds this panel to hold that the Michigan Supreme Court's finding of harmless error did not constitute improper fact finding. In Rose, the Supreme Court acknowledged that, although the determination of guilt or innocence is for the jury rather than the court, harmless error analysis addresses a different question - what is to be done about trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the outcome? See id. at 582 n.11, 106 S.Ct. at 3108 n.11. We do not find Rose, however, entirely dispositive of the instant matter. As we noted earlier, it cannot be said with any confidence that the error in this case had no effect on the outcome. To the contrary, it is quite possible that the general self defense instruction did affect the outcome by allowing a juror to reject Barker's claim for self defense, even if Barker was about to be raped, because the juror did not believe the rape would have resulted in death or great bodily harm. Moreover, although the Rose court cautions that, theoretically, nearly all trial errors can be considered to have invaded the province of the jury and altered the terms under which the jury considered a defendant's guilt or innocence, see id., the court in Rose certainly could not have meant that a trial error could never constitute a usurping of the jury's factfinding role by the court. Since, in the instant matter, the Michigan Supreme Court's finding of harmless error rests squarely on credibility judgments and the court's evaluation of conflicting evidence, this panel does not consider its ruling a derogation of Rose's cautionary advice.
 
 
 28
 This panel also finds that the Michigan Supreme Court's finding of harmless error in this matter substantially impaired Petitioner's due process right to present a full defense. The Supreme Court has stated that "[w]e have long interpreted this standard of [fundamental] fairness [guaranteed by the Sixth Amendment and the Due Process Clause] to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984) (finding that the due process right to present a complete defense has been interpreted to guarantee a defendant's right of access to evidence). See also Zemina v. Solem, 438 F.Supp. 455, 466-70 (D.S.D. 1977), aff'd, 573 F.2d 1027 (8th Cir. 1978) (erroneous jury instruction which went to defendant's theory of defense supported a finding of constitutional error); Miller v. South Dakota, 338 N.W.2d 673, 676 (S.D. 1983) (although errors in instructing the jury do not always rise to a constitutional level, "if the error goes to the heart of a defendant's theory of defense it can infringe upon defendant's rights to due process and jury trial.").
 
 
 29
 Barker's sole defense is that she killed the victim in order to prevent an imminent rape. The trial court's refusal to instruct the jury that a defendant has the right to use force, even deadly force, to resist a rape clearly goes to the very essence of Barker's claim of self defense. In this case, a juror may have reasonably interpreted the general self defense instruction to require Petitioner to demonstrate that: (1) a rape was imminent; and (2) that rape would have led to death or serious bodily injury. Michigan law, however, requires only that a defendant who used self defense to resist an imminent rape to demonstrate the former. By adding what is effectively another element to Petitioner's burden, the general self defense instruction undermined Barker's defense.Petitioner simply cannot be considered to have had a meaningful opportunity to present a complete defense when the jury was so plainly misinstructed on a matter critical to her defense. That the self defense instruction at issue is vitally important to a full and vigorous defense is underscored by the fact that Michigan law itself requires the instruction be given when there is a sufficient evidentiary basis to show that the defendant used self defense to prevent a rape. See Barker, 468 N.W.2d at 493. Instead of having a meaningful opportunity to present a full and vigorous defense, then, Petitioner's claim of self defense was significantly impeded and her due process rights to present a defense severely prejudiced.
 
 
 30
 This court is mindful that a habeas petitioner faces an uphill battle in establishing that an erroneous jury instruction is so prejudicial that he or she is entitled to habeas relief. The petitioner may not simply show that the instruction was undesirable, erroneous, or even universally condemned. See Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Instead, the petitioner must show that the improper instruction "so infected the entire trial that the resulting conviction violates due process." Id. at 147, 94 S.Ct. at 400. Although the burden is undeniably heavy, of course, this does not mean that a jury instruction may never rise to such proportions, see id., and we find that the failure to provide a specific self defense instruction on the issue of rape was so prejudicial to Barker's defense that in this case that burden has been satisfied.
 
 
 31
 In sum, we conclude that the trial court's failure to specifically instruct the jury that Petitioner Barker was entitled to use deadly force to prevent a sexual assault had a substantial and injurious influence on the jury's verdict and resulted in actual prejudice to Petitioner Barker. On that basis, we find that the Michigan Supreme Court engaged in an unreasonable application of the harmless error test under 28 U.S.C. § 2254(d). We further conclude that the Michigan Supreme Court's finding of harmless error violated Barker's constitutional rights to a trial by jury and to present a complete defense.
 
 III. CONCLUSION
 
 32
 For the foregoing reasons, the panel REVERSES the district court's denial of habeas relief, and orders that a conditional writ of habeas corpus be granted unless the State of Michigan commences trial proceedings against Ms. Barker within 180 days of this opinion. Should the State of Michigan decide to retry Ms. Barker, an appropriate jury instruction should be provided instructing the jury that a defendant is justified in using force, even deadly force, if she reasonably believes that a sexual assault is imminent.
 
 
 
 NOTES:
 
 
 *
 The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.
 
 
 [1]
 The medical examiner estimated that Madsen's injuries were consistent with an instrument which was 3/4 of an inch wide, had one sharp edge, one dull edge blade and was capable of inflicting a wound approximately five inches deep. (J.A. at 428). The knife, which was introduced into evidence as the weapon used by Barker, was consistent with those estimates. Id.
 
 
 [2]
 By way of Order filed August 12, 1998, the Sixth Circuit granted Barker's motion for certificate of appealability with respect to one issue only: whether the trial court violated Barker's due process rights by refusing to instruct the jury that a defendant was entitled to use deadly force to resist a sexual assault. The motion was denied as to all other issues presented.
 
 
 [3]
 Since AEDPA requires heightened respect for a state court's legal and factual determinations, Herbert v. Billy, 160 F.3d 1131, 1134 (6th Cir. 1998), if AEDPA is inapplicable an appellate court would employ more lenient, pre-AEDPA standards of review.
 
 
 [4]
 To reiterate, § 2254(d) allows a habeas court to review a state court's adjudication only where an unreasonable application of federal law has occurred. The primary authority on the harmless error standard remains Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967), where the Supreme Court held that constitutional errors may be treated as harmless unless a court can conclude, beyond a reasonable doubt, that the evidence complained of might have contributed to the defendant's conviction. Accordingly, a habeas court reviewing a state court's determination of harmless error must conclude that Chapman, the federal jurisprudence on harmless error, was misapplied in order to issue a writ under § 2254(d). See Nevers, 169 F.3d at 371.
 
 
 [5]
 We note that neither the magistrate judge nor the district court had the benefit of this Circuit's decision in Nevers when they each considered Barker's petition for the writ. In considering whether the Michigan Supreme Court's application of the harmless error test was "unreasonable," the magistrate, utilizing the Fifth Circuit's standard, asked whether the Michigan Supreme Court's finding of harmless error was so clearly incorrect that it would not be debatable among reasonable jurists. (J.A. at 833-34). The magistrate concluded that the Michigan Supreme Court's determination was not "unreasonable" because there was sufficient evidence to sustain it, namely: (1) the victim was 81 years old, suffered from various physical ailments, and relied on a case; (2) Petitioner was in her early twenties, was five feet seven inches tall, and weighed 170 pounds; and (3) the victim was struck on the head with a blunt object ten times and stabbed thirty two times. (J.A. at 837). The approach taken by the magistrate, however, is premised on the assumption that the Michigan Supreme Court's finding of harmless error could not be considered "unreasonable" because its conclusion (i.e., that no reasonable juror would have believed Barker's claim of self defense because the amount of force used was excessive) was adequately supported by the record. Thus, the approach taken by the magistrate interprets "unreasonable" in its ordinary sense as synonymous with irrational, illogical or unsubstantiated. Under this Circuit's standard, as established in Nevers, however, a state court's determination is considered "unreasonable" in the harmless error context, if it is simply proven that the error had a substantial and injurious effect or influence in determining the jury's verdict and resulted in actual prejudice - a plaintiff does not have to demonstrate that the state court's determination was irrational, illogical, or unsubstantiated.