**Scott D. HENRY, Petitioner–Appellant,**

v.

**Bill MARTIN, Director Michigan Department of Corrections, Respondent–Appellee.**

No. 02–2494.

United States Court of Appeals, Sixth Circuit.

July 29, 2004.

Thomas P. Rabette, Clarkston, MI, for Petitioner-Appellant.

Raina I. Korbakis, Asst. Atty. General, Office of the Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent-Appellee.

Before BATCHELDER and GIBBONS, Circuit Judges; and BEER, District Judge.[*]

GIBBONS, Circuit Judge.

A jury of the State of Michigan convicted petitioner-appellant Scott D. Henry of discharge of a firearm in an occupied structure and possession of a firearm during the commission of a felony. After exhausting his appeals in state court, Henry petitioned the United States District Court for the Eastern District of Michigan for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied Henry's petition but issued a certificate of appealability with respect to an ineffective assistance of counsel claim and a claim that the trial court deprived Henry of a fair trial by misrepresenting to his trial counsel that it would not instruct the jury that voluntary intoxication was unavailable to him as a defense. For the following reasons, we affirm the district court's denial of Henry's petition.

I.

On October 18, 1996, Henry visited a bar with a friend and consumed numerous alcoholic beverages. Henry's wife, Marijane Henry, testified at trial that, when Henry returned home between ten and eleven that evening, he appeared intoxicated. Marijane became angry and began screaming at Henry because she expected him home sooner, she was worried about him, and she was upset that he was apparently intoxicated. She continued yelling at Henry as she followed him into their bedroom, where he collapsed on the bed. She testified that their son, Anthony, was standing next to her at the time. Marijane told Henry he had no self control, to which Henry responded, "I'll show you self control." He suddenly arose from their bed, opened a dresser drawer, withdrew a handgun and an ammunition magazine from the drawer, and loaded the magazine into the gun. He then pointed the gun at the wall. Although Marijane did not remember seeing Henry fire the gun, she recalled hearing the gun discharge soon after he pointed it at the wall. Out of fear, Marijane fled with her son to a neighbor's home and called 9–1–1.

When police arrived at the Henrys' home, they noticed Henry lying on a couch inside. The officers entered the residence, handcuffed Henry, and placed him under arrest. Upon investigation, the officers found a bullet hole in the Henrys' bedroom above Anthony's crib as well as a bullet casing on the floor nearby. The police eventually located the gun and a detached ammunition magazine underneath a deck adjoining the house.

Henry was charged with one count of discharging a firearm in an occupied structure in violation of Mich. Comp. Laws § 750.234b(2)[1] (Count I) and one count of possession of a firearm during the commission of a felony in violation of Mich. Comp. Laws § 750.227b(1)[2] (Count II). He was brought to trial on these charges before a

---

[*] The Honorable Peter Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

[1] "An individual who intentionally discharges a firearm in a facility that he or she knows or has reason to believe is an occupied structure in reckless disregard for the safety of an individual is guilty of a felony...."

[2] "A person who carries or has in his or her possession a firearm when he or she commits

jury in the Michigan Circuit Court for the County of Oakland on September 18, 1997. Immediately prior to trial, defense counsel disclosed to the court that he intended to present a voluntary intoxication defense as to Count I on the basis that discharge of a firearm in an occupied structure is a specific intent crime. In reply, the prosecution requested that the court rule that the offense is a general intent and not a specific intent crime, that no specific intent instruction would be given to the jury, and that the jury would be explicitly instructed—pursuant to CJI2d 6.1 [3]—that voluntary intoxication was not a defense available to Henry. The court determined that discharge of a firearm in an occupied structure is a general intent crime and indicated that it would not provide the jury a specific intent instruction as to that crime. Yet, the court stated that it would not give an instruction under CJI2d 6.1 and that it would allow defense counsel to argue that Henry's intoxication excused his actions.

At trial, James Dowling, a sergeant with the Michigan State Police and a firearm examiner with the State Police Forensic laboratory, testified as a firearms expert. He stated that the gun found under the deck was a 9mm and that, after conducting ballistics tests, his expert opinion was that the casing found on the floor of the Henrys' bedroom had been discharged by the 9mm. Dowling also attested that the gun had a dual-safety system whereby it would only discharge if both the manual safety was off and over nine pounds of pressure was applied to the trigger.

Despite the court's earlier rulings, defense counsel proceeded to present a voluntary intoxication defense at trial. Henry testified that he did not recall leaving the bar on the night in question or anything that transpired that night up until his arrest. However, he admitted that the 9mm was his, that he kept it in the dresser, that he did not store the gun with the ammunition magazine intact, that he kept one shell in it at all times, that he stored the gun with its safety on, and that the safety would have to be turned off before the gun could be discharged.

After the presentation of all the evidence, the trial court reversed course and indicated that it would instruct the jury pursuant to CJI2d 6.1 that voluntary intoxication was not a defense to Count I. Nevertheless, defense counsel proceeded to argue during closing argument that Henry's intoxication precluded the jury from convicting him on Count I. The court eventually provided the CJI2d 6.1 instruction to the jury, and, on September 19, 1997, the jury found Henry guilty of both counts. The court sentenced him to one to four years imprisonment on Count I and two years imprisonment on Count II, to be served consecutively.

Henry appealed his conviction and sentence to the Michigan Court of Appeals. He first argued that discharge of a firearm in an occupied structure in violation of Mich. Comp. Laws § 750.234b(2) is a specific intent crime to which voluntary intoxication is an available defense. The court of appeals disagreed, holding that the offense is a general intent crime that "only requires proof that defendant intentionally discharged the firearm" and not "proof of the intent to cause a particular result or

or attempts to commit a felony ... is guilty of a felony...."

**3.** This instruction reads as follows: "There has been some evidence that the defendant was voluntarily intoxicated with alcohol or drugs when the alleged crime was committed. Voluntary intoxication is not a defense to [the crime charged here/ the crime of _____]. So it does not excuse the defendant if [he/she] committed this crime."

the intent that a specific consequence occur as a result of the performance of the prohibited act." *People v. Henry,* 239 Mich.App. 140, 607 N.W.2d 767, 770 (1999). The court concluded that, since voluntary intoxication is a defense only to specific intent crimes, the trial court did not err in determining that the defense was not available to Henry. *Id.* at 769–70.

Henry next argued that his trial counsel was ineffective. He asserted that his counsel's performance was deficient because counsel pursued a voluntary intoxication defense at trial despite an initial indication from the trial court that it was not applicable, because counsel presented the defense during closing argument after the trial court indicated that it would instruct the jury pursuant to CJI2d 6.1, and because counsel did not pursue a defense that Henry fired the gun accidentally. Henry further asserted that his counsel's performance was prejudicial because, had his counsel pursued an accidental discharge defense, a reasonable probability existed that the jury would not have found him guilty of Mich. Comp. Laws § 750.234b(2) for intentionally discharging the gun in his residence and in the presence of his wife and child.

Since Henry failed to move for a new trial or seek an evidentiary hearing on his ineffective assistance of counsel claim prior to pursuing it on appeal, the court of appeals limited its review of the claim to the trial record.[4] 607 N.W.2d at 770. Although the court acknowledged that Henry could have pursued an accidental discharge defense at trial, it found that his counsel's failure to pursue this defense in lieu of a voluntary intoxication defense did not constitute deficient performance because the decision was a reasonable trial strategy based upon an understanding that the trial court would not affirmatively notify the jury that Henry could not rely on a voluntary intoxication defense with respect to Count I. *Id.* at 771. As for presenting the voluntary intoxication defense during closing argument, the court of appeals again concluded that the decision did not constitute deficient performance because it was also a matter of trial strategy. *Id.* Finally, with respect to prejudice, the court held that, in light of the evidence presented at trial, there was not a reasonable probability that the jury would have reached a different conclusion even if defense counsel had presented an accidental discharge defense.[5]

---

4. Under Michigan law, if a defendant does not move for a new trial or seek an evidentiary hearing to develop a record regarding the effectiveness of his trial counsel before presenting the claim on appeal, review of his ineffective assistance claim is limited to the trial record, provided that it contains sufficient detail to support defendant's claims. *People v. Barclay,* 208 Mich.App. 670, 528 N.W.2d 842, 843–44 (1995). In limiting its review of Henry's ineffective assistance claim to the trial record, the court of appeals did not consider the affidavit of an expert attached to Henry's application for leave to appeal before that court. The affidavit indicated that the expert would testify at a new trial about how the discharge of the gun in this case could have been accidental.

5. This court's precedent seemingly conflicts on the issue of whether a Michigan court's

denial of a defendant's ineffective assistance of counsel claim on the basis of a review of only the trial record constitutes an adjudication of defendant's ineffective assistance claim on the merits or a finding of procedural default. *Compare Mitchell v. Mason,* 325 F.3d 732, 739 (6th Cir.2003) (finding that such a denial was an adjudication on the merits), *with Lancaster v. Adams,* 324 F.3d 423, 437–38 (6th Cir.2003) (holding that such a denial was a finding of procedural default). However, we need not resolve this apparent conflict because, even if the denial of an ineffective assistance of counsel claim on the basis of the trial record constitutes procedural default under Michigan law, respondent waived the default by failing to raise it as a defense to Henry's ineffective assistance claim in its answer to his petition. *See Trest v. Cain,* 522

With respect to the voluntary intoxication instruction, the court of appeals found that the trial court erred by indicating prior to trial that it would not instruct the jury pursuant to CJI2d 6.1. It concluded that, because defense counsel relied on this misrepresentation as a basis for presenting a voluntary intoxication defense, the trial court seriously undermined that defense. *Id.* at 772. However, the court of appeals determined that this error did not warrant reversal because there was no reasonable probability that the outcome of the trial would have been different had defense counsel presented any other available defense. *Id.*

Henry filed an application with the Michigan Supreme Court for leave to appeal the decision of the court of appeals. He asserted that the court of appeals erred in concluding that he did not receive ineffective assistance of counsel and in finding that the trial court's misrepresentation was harmless. The supreme court summarily denied Henry's application for leave to appeal on September 5, 2000.

On February 26, 2001, Henry petitioned the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argued, as he had before the Michigan Court of Appeals and the Michigan Supreme Court, that he received ineffective assistance of counsel at trial and that the trial court's initial indication that it would not instruct the jury under CJI2d 6.1 prejudicially undermined his defense, depriving him of a fair trial. Although it found that the Michigan Court of Appeals unreasonably applied *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny in determining that defense counsel's performance was not deficient, the district court concluded that the finding that Henry was not prejudiced by his trial counsel's performance was objectively reasonable. The district

court also determined that the Michigan Court of Appeals's decision that the trial court's error did not prejudice Henry was objectively reasonable. Consequently, the district court denied Henry's petition.

Henry filed a notice of appeal of the district court's decision on December 5, 2002. On January 10, 2003, the district court granted Henry a certificate of appealability as to both his ineffective assistance of counsel claim and his trial error claim.

## II.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a federal court may not grant a habeas petitioner relief for a claim adjudicated on the merits by a state court unless the state court adjudication of petitioner's claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under AEDPA, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Rather, the issue is whether the state court's decision was "contrary to" or "an unreasonable application of" clearly established federal law. *See id.* at 411–12, 120 S.Ct. 1495. A decision is "contrary to" clearly established federal law if the state court arrives at a

U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444    (1997).

conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts materially indistinguishable from relevant Supreme Court precedent and arrives at a contradictory result. *Id.* at 412–13, 120 S.Ct. 1495. A federal court may also grant habeas relief if the state court unreasonably applies Supreme Court precedent by identifying the correct governing legal principle from the Supreme Court's decisions but applying that principle to the facts of the prisoner's case in an objectively unreasonable way. *Id.* at 413, 120 S.Ct. 1495.

This court presumes state court findings of fact are correct for habeas corpus purposes unless the petitioner presents clear and convincing evidence to rebut this presumption. 28 U.S.C. § 2254(e)(1); *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998). We owe complete deference to a federal district court's or a state court's findings of fact supported by the evidence. *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir.1994). We otherwise review a district court's denial of habeas corpus relief *de novo. Simpson v. Jones,* 238 F.3d 399, 405 (6th Cir.2000).

### A.

The Sixth Amendment grants criminal defendants the right to effective assistance of counsel at trial. *Strickland,* 466 U.S. at 685–86, 104 S.Ct. 2052. To demonstrate that his counsel provided ineffective assistance at trial in violation of the Constitution, a defendant must show that his counsel's performance was deficient and that it prejudiced his defense. *Id.* at 687, 104 S.Ct. 2052. A counsel's performance was deficient if it was objectively unreasonable under the circumstances. *Id.* at 688, 104 S.Ct. 2052. A counsel's performance was prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. For the purpose of ineffective assistance claims, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"; indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052.

■ Henry argues that the state court unreasonably applied *Strickland* in determining that his trial counsel's performance was neither deficient nor prejudicial. The district court denied Henry relief on the ground that the state court reasonably concluded under *Strickland* that he did not show prejudice. Henry argues that he did show prejudice because, had his counsel presented an accidental discharge defense, a reasonable probability exists that the outcome of his trial would have been different. Whether a counsel's performance was ineffective is a mixed question of fact and law reviewed *de novo. See Coleman v. Mitchell,* 268 F.3d 417, 445 (6th Cir. 2001).

The district court succinctly and persuasively stated why the court of appeals's conclusion with regards to prejudice was objectively reasonable:

> [T]he evidence that petitioner intentionally discharged the firearm was exceedingly strong, if not overwhelming. The evidence showed that petitioner argued with his wife who accused him of having no self-control, then announced that he would "show her some self-control," or words to that effect, and took a handgun from the dresser drawer. These were intentional acts indicating purposeful action in response to a perceived insult or slight. Next, petitioner put a clip or magazine into the gun, another inten-

tional act. Petitioner testified that he normally stored the gun with the safety on. If this was the case on the day of the incident, it would have required another intentional, volitional act to disengage the safety before the gun could be fired. Petitioner then fired the gun. Michigan State Police Sergeant James Dowling testified that he tested the trigger of the [gun] used in the incident and found that it took between nine and ten pounds of pressure on the trigger to cause the gun to fire. This is a substantial amount of pressure on the trigger, again suggesting an intentional act. It is also noteworthy that petitioner pointed the gun at a wall before firing it. This also indicates intentional action, where petitioner sought to make a point, however recklessly and foolishly, but did not intend to injure his wife or child, both of whom were present when he pointed the gun at the wall and fired it. Further, ... there was no testimony that petitioner staggered or stumbled or fell or bumped into anything when the gun discharged.

In other words, the evidence strongly supports a finding that Henry fired the gun intentionally, and there is no support for a finding that the gun discharged accidental- ly on the night in question.[6] Henry simply has not demonstrated a reasonable proba- bility that the outcome of his trial would have been different but for his trial coun- sel's performance, much less that the court of appeals's decision to the contrary was objectively unreasonable.[7] Because the state court of appeals reasonably conclud- ed that Henry could not demonstrate prej- udice, his ineffective assistance claim was properly denied by the district court and we need not address the reasonableness of the state court's conclusion that the per- formance of Henry's counsel was not defi- cient.

## B.

■ Henry asserts that the trial court's misrepresentation prior to trial that it would not instruct the jury that a volun- tary intoxication defense was unavailable to him so undermined his defense that it deprived him of a fair trial in violation of his due process rights under the Four- teenth Amendment. Had the court cor- rectly indicated prior to trial that it would instruct the jury that the defense was not available, Henry argues, his trial counsel would not have pursued that defense and would instead have focused on an acciden- tal discharge defense. The court of ap-

6. Henry urges us to consider the post-convic- tion affidavit appended by him to his applica- tion for leave to appeal before the court of appeals. Assuming without deciding that the affidavit is part of the record for our review, it does not establish a reasonable probability that the outcome of Henry's trial would have been different if his trial counsel presented an accidental discharge defense. While the affi- ant opines that it is theoretically possible that the gun discharged accidentally, he provides no evidence indicating that the gun actually discharged accidentally on the night in ques- tion. Nor does the affidavit in any way refute the evidence indicating that Henry acted in- tentionally in firing the gun.

7. Citing *Barker v. Yukins,* 199 F.3d 867 (6th Cir.1999), Henry argues that the court of ap-

peals improperly assessed the weight of the evidence against him when determining that no reasonable probability existed that the out- come of his trial would have been different but for his counsel's performance. Henry's argument is misplaced. *Strickland* expressly directs courts to consider the strength of un- contested evidence in determining whether a defendant can establish that his counsel's per- formance was prejudicial. 466 U.S. at 695– 96, 104 S.Ct. 2052. Moreover, while *Barker* provides that it is improper for a state court to weigh conflicting trial evidence when de- termining whether an error by the trial court was harmless, 199 F.3d at 874, the case did not involve an ineffective assistance of coun- sel claim and therefore does not apply here.

peals agreed that the trial court's misrepresentation seriously undermined Henry's defense, but it found the error to be harmless. Henry asserts that the court of appeals unreasonably concluded that the trial court's error was harmless. The district court disagreed.[8]

Although Henry does not explicitly identify the applicable Supreme Court precedent he believes the court of appeals unreasonably applied, it is clear he means to challenge the manner in which the court of appeals determined the trial court's error to be harmless. On direct appeal, a reviewing court may declare a constitutional trial error[9] to be harmless only if the court finds it was harmless beyond a reasonable doubt. *Bulls v. Jones*, 274 F.3d 329, 334–35 (6th Cir.2001) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). However, a federal habeas court may grant habeas relief for a constitutional trial error only if it concludes that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct.

1239, 90 L.Ed. 1557 (1946)). If a federal habeas court has grave doubt as to whether a constitutional trial error so prejudiced the petitioner, the court "must treat the error as if it did so." *O'Neal v. McAninch*, 513 U.S. 432, 438, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

Although *Brecht* predates the enactment of AEDPA, its analysis still applies. *Hill v. Hofbauer*, 337 F.3d 706, 718 (6th Cir. 2003). For Henry to prevail on his claim that the court of appeals unreasonably applied Supreme Court precedent in determining that the trial court's misrepresentation was harmless, then, we must find that the misrepresentation had a substantial and injurious effect or influence on the jury's verdict, or we must at least gravely doubt whether the misrepresentation had such an impact. *See Bulls*, 274 F.3d at 335 (providing that, if a federal habeas court determines under *Brecht* that a constitutional trial error had a substantial and injurious effect or influence on the jury's verdict, the requirements of AEDPA will be satisfied in that it will have also been determined that the state court unreasonably applied *Chapman* in finding that the

8. The district court incorrectly characterized the trial court's error as a misinstruction of the jury. Rather than misinstructing the jury, the trial court misrepresented to defense counsel prior to trial what the contents of the jury instructions would eventually be, leading counsel to pursue a futile defense. This type of error is not one of misinstruction but, rather, an error that threatens to deprive a defendant of his due process right to a fair trial. *Cf. United States ex rel. Ferris v. Finkbeiner*, 551 F.2d 185, 186 (7th Cir.1977) (finding that sentencing court deprived criminal defendant of right to due process by misinforming him prior to his guilty plea as to whether he would be subject to a mandatory parole period after serving a term of incarceration).

9. While there has been no express finding that the trial court's error was a constitutional error, the court of appeals implicitly drew

this conclusion in finding that the error seriously undermined Henry's defense. We agree that misinforming a defendant's counsel as to whether he will be able to argue a particular defense before the jury jeopardizes a criminal defendant's due process right to a fair trial and, thus, rises to the level of constitutional error. We also note that Henry does not suggest that the trial court's error was a structural error not subject to harmless error review, nor do we believe any basis exists for declaring the error to be structural. *See Rose v. Clark*, 478 U.S. 570, 578–79, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (stating that constitutional errors are generally not structural and that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis").

constitutional trial error was harmless beyond a reasonable doubt).

We are not persuaded that the trial court's error had any such effect here. No misrepresentation was made by the trial court to the jury. The jury was properly instructed as to the elements of discharge of a firearm in an occupied structure and found Henry guilty of the offense beyond a reasonable doubt. The error does not undermine any of the evidence presented at trial against Henry, which strongly supports the jury's finding of his guilt on the firearm discharge offense and particularly on the issue of whether he fired the gun intentionally. The error's only effect was to cause Henry's trial counsel to pursue a voluntary intoxication defense instead of an accidental discharge defense. Yet, as discussed herein, the performance of Henry's trial counsel and his failure to present an accidental discharge defense did not prejudice Henry. In sum, the trial court's error did not have a substantial and injurious effect or influence on the jury's verdict. Therefore, the court of appeals's decision that the error was harmless is not objectively unreasonable.[10]

### III.

For the foregoing reasons, we affirm the district court's denial of Henry's petition for a writ of habeas corpus.

---

10. Henry also contends that, in determining that the trial court's error was harmless, the court of appeals independently violated his constitutional rights. Specifically, he asserts that, as in *Barker*, the court of appeals improperly invaded the province of the jury and deprived him of a meaningful opportunity to present a full defense. We need not decide this issue. In *Barker*, this court first found that the state court of appeals unreasonably determined that the trial error was harmless and only then considered whether the court of appeals violated petitioner's rights in reaching that conclusion. 199 F.3d at 873–76. Here, on the other hand, the court of appeals's conclusion that the trial error was harmless is objectively reasonable.