Eric W. TAYLOR, Petitioner,

v.

Pamela WITHROW, Respondent,

No. CIV. 00–CV–72292–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 31, 2001.

Eric Taylor, Ionia, MI, Pro se.

William C. Campbell, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent.

## OPINION AND ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

Eric W. Taylor, ("petitioner"), presently confined at the Michigan Reformatory in

1. Staff Attorney, Daniel Besser, provided quality research assistance.

Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction on one count of second degree murder, M.C.L.A. 750.317; M.S.A. 28.549, one count of assault with intent to do great bodily harm less than murder, M.C .L.A. 750.84; M.S.A. 28.279; one count of carrying a concealed weapon, M.C.L.A. 750.227; M.S.A. 28.424; and one count of felony-firearm. M.C.L.A. 750.227b; M.S.A. 28.424(2). For the reasons stated below, petitioner's application for writ of habeas corpus is **GRANTED**.

## I. BACKGROUND

Petitioner was charged with open murder[2], assault with intent to commit murder, carrying a concealed weapon, and possession of a firearm in the commission of a felony, arising from an incident that occurred in Ann Arbor, Michigan on December 3, 1993. Following a jury trial in the Washtenaw County Circuit Court, petitioner was found guilty of the lesser offense of second degree murder, guilty of the lesser offense of assault with intent to do great bodily harm, and guilty as charged on the other two offenses.

On December 3, 1993, a number of friends gathered at the home of Bernadine Joplin at the Pine Lake Projects in Ann Arbor, Michigan. In addition to Bernadine Joplin, present that evening at the apartment were Shalonda Jones, who was the mother of petitioner's child. Also present were Shalonda Jones' brother James Jones, Steve Horgrow, Jamar French, Edgar Campbell, and Michael Franklin. Everyone present was drinking alcohol and smoking marijuana.

Petitioner arrived at this gathering at approximately midnight. Petitioner became involved in an argument with Horgrow over Shalonda Jones. According to Ms. Jones, petitioner had been angry the night before about an alleged relationship between herself and Horgrow. Ms. Jones also testified that shortly prior to the shooting on December 3rd, petitioner threatened to kill her, Mr. Horgrow, and himself. When petitioner arrived at the party that night, he saw Horgrow kissing Jones and a confrontation ensued between the two men. As the two men were being separated, Horgrow and Jamar French threatened petitioner, and petitioner pulled out a gun and one shot was fired. After the shot was fired, Horgrow and Michael Franklin were both hit and fell to the ground. The other persons at the party fled the scene, except for petitioner, who remained and administered cardiopulmonary resuscitation (CPR) to Horgrow until the police and emergency medical technicians arrived. Petitioner did not flee the scene when the police arrived, but requested a ride from Edgar Campbell to the hospital to check on Horgrow's condition.

During his opening statement, defense counsel informed the jury that during the confrontation between petitioner and Horgrow, petitioner pulled out the gun in self-defense, but the gun had discharged accidentally during the ensuing struggle. Petitioner subsequently testified on his own behalf at trial. Petitioner indicated that when he arrived at the party, he asked Shalonda Jones about the nature of her relationship with Horgrow. Petitioner then left the party to get more beer. When he returned to the party, he observed Shalonda and Horgrow kissing. Petitioner confronted Horgrow about the

**2.** Under Michigan law, it is proper to charge a defendant with the crime of open murder. Such a charge gives a circuit court jurisdiction to try a defendant on first and second

degree murder charges. *See People v. McKinney*, 65 Mich.App. 131, 135, 237 N.W.2d 215 (1975).

relationship between himself and Shalonda, and Horgrow replied that nothing was going on between the two. At this point, Horgrow's friend, Jamar French, entered the room and asked Horgrow: " 'Grow, this nigga got some beef" and looked at petitioner. Petitioner denied that he had any "beef" or dispute with Horgrow. Horgrow then threatened petitioner, saying: "if you got a problem, we can go outside, I'll fuck you up." French then remarked: "If you go outside 'Grow, you go outside with us all." James Jones and Edgar Campbell then grabbed petitioner. While trying to get away from these men, petitioner saw Horgrow make a gesture with his right hand, as though he were reaching at his waist for a gun. Petitioner indicated that he had seen Horgrow being arrested in the past with a gun, was aware that Horgrow had pulled a gun in a Ypsilanti restaurant, and stated that the victim was known to keep a gun in his belt. When petitioner saw Horgrow make this gesture, he became terrified and believed that the victim was going to shoot him. Believing that he was about to be shot, petitioner testified that he pulled his gun. After petitioner pulled the gun, James Jones reached for the gun, causing the gun to discharge and fire one shot. After this shot discharged, Jones left the scene with the gun while petitioner performed CPR on Horgrow.

During the jury charge conference, the trial court denied petitioner's request to instruct the jury on self-defense and imperfect self-defense. The jury deliberated over the course of three days, and sent out notes on two separate days indicating that they were deadlocked. The jury also sent out three notes pertaining to the elements of second degree murder and what circumstances could reduce second degree murder to a lesser crime. On March 30, 1995, petitioner was found guilty of second degree murder, assault with intent to do great bodily harm less than murder, carrying a concealed weapon, and felony-firearm.

Petitioner's conviction and sentence were affirmed by the Michigan Court of Appeals and the Michigan Supreme Court. *People v. Taylor* No. 187231 (Mich.Ct.App. July 18, 1997); *leave den.* 459 Mich. 878, 586 N.W.2d 743 (1998)(Kelly, J. would grant leave to appeal); *reconsideration den.* 459 Mich. 878, 590 N.W.2d 65 (1999)(Cavanagh and Kelly, JJ. would grant reconsideration and on reconsideration would grant leave to appeal). Petitioner has now filed an application for a writ of habeas corpus alleging four different claims for relief: [3]

I. Petitioner's writ of habeas corpus must be granted because the trial court, in denying petitioner's request to instruct the jury on his theory of self-defense, which was timely and supported by the evidence, deprived petitioner of his Fifth and Sixth Amendment rights.

II. Petitioner's writ of habeas corpus must be granted because the trial court, in denying petitioner's request to instruct the jury on his theory of imperfect self-defense, which was timely and supported by the evidence, deprived petitioner of his Fifth and Sixth Amendment rights.

III. Petitioner's writ should be granted where the trial court, by improperly preventing his counsel from adducing evi-

---

**3.** Petitioner originally filed a petition for writ of habeas corpus with this Court on June 21, 1999, in which he raised seven claims for relief. That petition was dismissed without prejudice on the ground that it was a mixed petition containing unexhausted claims. *Tay-*

*lor v. Withrow,* U.S.D.C. 99–CV–73104–DT (E.D. Mich. April 18, 2000). On May 8, 2000, petitioner resubmitted the instant petition, in which he deleted the three unexhausted claims from consideration.

dence of the victim's character as to violence through testimony of prior acts of carrying and brandishing a gun, violated his constitutional right to present a defense.

IV. Petitioner's writ of habeas corpus should be granted where two substitute judges presided over the trial after the evidence had been concluded and the jury had been instructed but before a verdict had been rendered and additional instructions had to be given to the jury, thus depriving petitioner of a fair and impartial jury trial and his due process rights.

## II. STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio,* 128 F.3d 322, 326 (6th Cir.1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor,* 529 U.S. 362, 412–413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495.

Finally, the term "clearly established federal law" refers to the holdings as opposed to the dicta of the U.S. Supreme Court's decisions at the time of the relevant state court decisions. *Williams v. Taylor,* 529 U.S. at 412, 120 S.Ct. 1495. With the AEDPA, Congress limited the source of law for federal habeas relief to cases decided by the U.S. Supreme Court. *Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir.1998). However, to the extent that lower or inferior federal courts have decided factually similar cases, references to these decisions by a federal habeas court is appropriate or relevant in determining whether the state court's application of U.S. Supreme Court law was reasonable or unreasonable. *Haynes v. Burke,* 115 F.Supp.2d 813, 817 (E.D.Mich.2000)(Hood, J.); *See also Mountjoy v. New Hampshire State Prison,* 245 F.3d 31, 35–36 (1st Cir. 2001); *Hull v. Kyler,* 190 F.3d 88, 104 (3rd Cir.1999); *Atley v. Ault,* 191 F.3d 865, 871 (8th Cir.1999).

## III. DISCUSSION

Petitioner was denied a fair trial when the trial court refused to instruct the jury on his theories of self-defense and imperfect self defense. (Claims # 1 and # 2).

Petitioner's first two claims will be discussed together. In his first claim, petitioner contends that the trial court erred

in refusing to instruct the jury on the theory of self-defense. In his second related claim, petitioner alleges that the trial court erred in refusing to instruct the jury on the theory of imperfect self-defense.

The issue of self-defense was first raised by defense counsel during *voir dire*, when he asked jurors if they had any problems with the concept of self-defense. (Trial Transcript, hereinafter, "T.", 03/20/95, pp. 67–68; 148). The prosecutor also questioned jurors about their feelings about the issue of self-defense. (*Id.* at pp. 86, 92). During his opening statement, defense counsel informed the jury that during the confrontation between petitioner and Horgrow, petitioner pulled his gun in self-defense, but the gun had discharged accidentally during the ensuing struggle. (*Id.* at pp. 173–176). Petitioner subsequently testified that after Horgrow and Jamar French made threats to him, James Jones and Edgar Campbell grabbed him and began dragging him. While trying to break free, petitioner observed Horgrow put his hand down towards his waist. Petitioner believed that Horgrow was going to pull a gun and shoot him. Petitioner indicated that he was terrified and he pulled his gun. James Jones then snatched his gun and it discharged accidentally. (T., 03/27/95, pp. 112–116).

At the jury charge conference, the trial court declined to give the jury petitioner's requested instructions on self-defense and imperfect self-defense. In so ruling, the court indicated that no testimony of self-defense had been presented in this case. The trial court based its decision on the fact that petitioner claimed that someone else shot the gun or caused it to go off. (T., 03/28/95, pp. 6, 9). With respect to the first degree murder charge, the trial court did instruct the jury on the lesser offenses of second degree murder, voluntary manslaughter, involuntary manslaughter, and negligent use of a firearm. (*Id.* at pp. 86–93). With respect to the assault with in-

tent to commit murder charge, the judge instructed the jury on the lesser offense of assault with intent to do great bodily harm less than murder. (*Id.* at pp. 95–98). The trial court also instructed the jury on the defense of accident. (*Id.* at pp. 87–88; 101–102). In affirming the conviction, the Michigan Court of Appeals indicated that the trial court properly refused to instruct the jury on the theories of self-defense and imperfect self-defense when petitioner testified that the gun went off accidentally. *People v. Taylor*, 187231, Slip. Op. at * 1–2.

■■■ The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbe*, 431 U.S. 145, 154–155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). To warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir.2000); *cert. den.* 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000). Allegations of trial error · raised in challenges to jury instructions are reviewed for harmless error by determining whether they had a substantial and injurious effect or influence on the verdict. *Id.* A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because

an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *Fama v. Commissioner of Correctional Services*, 69 F.Supp.2d 388, 397 (E.D.N.Y.1999); *aff'd* 235 F.3d 804 (2nd Cir.2000).

■■■ Petitioner first claims that the trial court erred in refusing to instruct the jury on his theory of self-defense. A defendant is entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). When there is evidentiary support for a defendant's theory of self-defense, a failure to instruct the jury on self-defense violates a criminal defendant's Fifth and Sixth Amendment rights. *Everette v. Roth*, 37 F.3d 257, 261 (7th Cir.1994). Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, fn. 1 (6th Cir.1999)(citing to *People v. Heflin*, 434 Mich. 482, 456 N.W.2d 10 (1990)).

■■ In the present case, the state trial and appellate courts indicated that an instruction on the theory of self-defense was improper, because there had been no evidence or testimony that petitioner acted in self-defense. This Court finds the state courts' rulings to be an unreasonable determination of the facts in the record. Petitioner testified that he was threatened by the victim and Jamar French and then grabbed by Edgar Campbell and James Jones. While trying to break free, petitioner observed the victim reach for his waist as though he was reaching for a gun. Knowing the victim to have carried a gun in the past, petitioner testified that he pulled his gun because he was terrified of being shot. There was thus evidence that petitioner had pulled his gun in self-defense. Although petitioner testified that the gun discharged accidentally, petitioner admitted pulling the gun intentionally. Petitioner was ultimately convicted of second degree murder. The elements of second degree murder are:

1.  an intent to kill;
2.  an intent to do great bodily harm; or
3.  an intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result.

*People v. Dykhouse*, 418 Mich. 488, 494, 345 N.W.2d 150 (1984). As petitioner argues in his brief [4], the jury could infer that by simply pulling the gun and pointing it, petitioner was acting in wanton and wilful disregard that the likely consequence of his action was to cause death or great bodily harm. Thus, the jury should have been instructed on petitioner's theory of self-defense not only to determine why Horgrow was shot, but also to determine whether petitioner was justified in pulling the gun in the first place.

■■ In the present case, petitioner was entitled to an instruction on self-defense, because sufficient evidence was presented at trial for a jury to find in his favor on this issue. *Mathews v. United States*, 485 U.S. at 63, 108 S.Ct. 883. On the evidence before it, the jury could have believed petitioner's version of the events and accepted his defense of self-defense. Accordingly, the trial court should have given the jury the requested instruction on self-

---

4. See Memorandum of Law in Support of Petitioner's Petition for Writ of Habeas Corpus attached to the Amended Petition, p. 26.

defense and "guided the jury in its evaluation of the evidence in deciding whether to accept or reject" petitioner's defense. *See Fonseca v. Government of the Virgin Islands*, 119 F.Supp.2d 531, 535 (D.Virgin Islands 2000). Petitioner's self-defense argument was not a peripheral issue, but was a central part of petitioner's testimony at trial. The failure to give the jury an instruction on self-defense went to a "central issue of guilt or innocence" in this case and thus infected the fairness of the trial itself. *Berrier v. Egeler*, 583 F.2d 515, 522 (6th Cir.1978). Moreover, under petitioner's version of events, there was nothing inconsistent between his defense that he pulled his gun and pointed it in self-defense, but that the gun discharged accidentally. In any event, a homicide defendant may be entitled to an instruction on both accident and self-defense, even though these two defenses may be inconsistent. *Mathews v. United States*, 485 U.S. at 64, 108 S.Ct. 883 (citing to 4 Wharton § 545, p. 32).

■ This Court also finds that the trial court deprived petitioner of a fair trial by declining to instruct the jury on the defense of imperfect self-defense. Although the Michigan Supreme Court has yet to recognize the doctrine of imperfect self-defense as a defense to murder, *See People v. Posey*, 459 Mich. 960, 590 N.W.2d 577 (1999), the Michigan Court of Appeals has recognized imperfect self-defense as a qualified defense that can mitigate a murder charge to voluntary manslaughter. This defense is available where the defendant would have been entitled to evoke the theory of self-defense had he or she not been the initial aggressor. *People v. Kemp*, 202 Mich.App. 318, 323, 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich.App. 27, 31–32, 384 N.W.2d 72 (1985). However, a defendant is not entitled to invoke the doctrine of imperfect self-defense if he or she initiated the confrontation between the victim and himself or herself with the intent to kill or do great bodily harm, even if, at the time he or she shot the victim, the defendant honestly and reasonably believed that his or her life was in danger. *People v. Kemp*, 202 Mich.App. at 324, 508 N.W.2d 184. The imperfect self-defense theory is also unavailable where the defendant makes a decision to kill the victim without being in a position where it was immediately necessary. *People v. Butler*, 193 Mich.App. 63, 67, 483 N.W.2d 430 (1992).

■ In the present case, there was testimony that petitioner had confronted Shalonda Jones earlier that evening and had threatened to kill her, Steve Horgrow, and himself if he found out that she was "messing around" with Horgrow. There was also evidence that petitioner confronted Horgrow about his alleged relationship with Jones. The jury could therefore have determined that petitioner was not entitled to a complete acquittal of the open murder charge under a theory of self-defense because of the fact that he initiated the confrontation, but could have concluded that the charge of second degree murder should be reduced to voluntary manslaughter on a theory of imperfect self-defense, in light of petitioner's testimony that he believed that the victim was reaching for a gun.

Recently, this Court granted habeas relief to a petitioner convicted of second degree murder who claimed that the trial court gave an erroneous involuntary manslaughter instruction to the jury after the jury requested clarification on the offense of voluntary manslaughter, which was one of the lesser offenses that had been given to the jury for their consideration. *Hardaway v. Withrow*, 147 F.Supp.2d 697 (E.D.Mich.2001). In so ruling, this Court concluded that the submission of the erroneous involuntary manslaughter instruction to the jury, in lieu of the proper

voluntary manslaughter instruction, was not harmless error, where there was evidence that petitioner believed that he was acting in self-defense. The Court concluded that this evidence of self-defense indicated that with the proper instruction on voluntary manslaughter, a jury might not have convicted petitioner of second degree murder, opting to convict him of the lesser offense of voluntary manslaughter instead. *Id.* at 711–12.

■■■■■■ The question becomes whether the trial court's error in refusing to instruct the jury on the theories of self-defense and imperfect self-defense was harmless in this case. In *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995), the U.S. Supreme Court held that when a federal court judge in a habeas proceeding is in grave doubt about whether a trial error of federal constitutional law had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless and the petitioner must win. The focus in such a situation is not merely whether there is enough evidence to support the result, apart from the phase affected by the error. It is, rather, even so, whether the error itself has substantial influence. If so, or a judge is left in grave doubt, the conviction cannot stand. *O'Neal,* 513 U.S. at 438, 115 S.Ct. 992. Only if a federal habeas court can say with certainty that a trial error had little or no impact on the judgment, should the judgment stand. *Barker v. Yukins,* 199 F.3d 867, 874 (6th Cir.1999); *cert. den. sub. nom. Yukins v. Barker,* 530 U.S. 1229, 120 S.Ct. 2658, 147 L.Ed.2d 273 (2000); *Fargo v. Phillips,* 129 F.Supp.2d 1075, 1085 (E.D.Mich.2001).

This Court cannot say with certainty that the trial court's refusal to instruct the jury on the defenses of self-defense and imperfect self-defense had little or no im-

pact on the jury's decision. A trial court errs by failing to give a requested instruction only when the requested instruction is correct, it is not substantially covered by the actual jury charge, and when not giving the instruction would substantially impair a defendant's defense. *Scott v. Mitchell,* 209 F.3d at 883. In the present case, the requested self-defense and imperfect self-defense instructions were correct, neither defense was covered by the actual jury charge given to the jury, and most importantly, the failure to give these instructions substantially impaired petitioner's defense in this case. As petitioner notes in his brief[5], self-defense was a central issue in this case from the beginning of trial. The trial court and the prosecutor knew about the issue of self-defense at the beginning of trial, yet neither voiced any objections to this defense being presented. Both defense counsel and the prosecutor brought up the issue of self-defense during the voir dire of the jury. Later, during his opening statement, defense counsel indicated to the jury that self-defense and accident would both play a role in petitioner's theory of defense at trial. Defense counsel, in fact, indicated that petitioner would testify that he pulled the gun in self-defense, but that the gun accidentally discharged. It was only at the conclusion of trial that the prosecution objected to the jury being instructed on the defense of self-defense, even though petitioner had relied upon this defense throughout the trial. The trial court's refusal to give an instruction on self-defense after defense counsel had relied on this defense throughout trial deprived petitioner of due process. *See e.g. People v. Patskan,* 387 Mich. 701, 709–710, 199 N.W.2d 458 (1972)(where trial judge stated that he would give instruction on attempted assault with intent to rob being armed, the

5. *Id.* pp. 11–13.

failure to do so violated the statute relating to a request for instructions and deprived the defendant of due process of law, in prosecution for assault with intent to commit robbery being armed).

Secondly, in light of the evidence presented at trial, this Court cannot state with certainty that the trial court's refusal to instruct the jury on the defenses of self-defense and imperfect self-defense had little or no impact on the jury verdict. The evidence from trial shows that the victim was shot only one time in the left flank. The medical examiner indicated that this did not appear to be a close range gunshot wound. (T. 03/21/95, pp. 86–92). After the victim was shot, petitioner did not flee the scene but attempted to administer life-saving procedures on the victim by performing CPR. Petitioner was still performing CPR on the victim when the police arrived on the scene. In fact, when the police arrived, petitioner asked the police to perform CPR on the victim. (T., 03/27/95, pp. 76–77; 188–121). Petitioner also asked Edgar Campbell to take him to the hospital to check on the victim's condition after the shooting. (T. 03/20/95, pp. 252–253). Petitioner voluntarily turned himself into the police several days after this incident. (T. 03/27/95, p. 126). All of this evidence raises a grave doubt in this Court's mind about whether the circumstances of this case show that petitioner acted with malice aforethought in putting into motion the events which lead to the shooting of Steve Horgrow.

The Court also notes that the jury deliberated in this case for over three days and indicated twice that it was hopelessly deadlocked. More importantly, on the second day of deliberations, the jury sent three notes to the trial court:

THE COURT: I thought I would read into the record the three notes that we received from the jury.

The first one is: "Is Number 4 an element for considering second degree murder?"

The second one is: "If all the elements of a lesser crime are satisfied, for example, does Number 4 on second degree murder prevent us from charging with second degree murder?"

The third one is: "If the crime meets all the elements of a higher charge, or more serious crime, and the killing was not justified or excused, must we consider, quote, 'circumstances that reduce it to a lesser crime', end quote. If yes, what circumstances?" (T. 03/29/95, p. 3).

The court went on to instruct the jury that they must decide, based upon the evidence and the previous instructions given by Judge Conlin [the trial judge], whether there are circumstances in this case that reduce the killing to a lesser crime. (*Id.* at p. 4).

This Court cannot state with certainty that the failure to instruct the jury on the defenses of self-defense and imperfect self-defense had little or no impact on the verdict, where it was apparent from the jury's questions that they were focused on choosing between finding petitioner guilty of second degree murder or voluntary manslaughter. It is also clear that they were struggling with the verdict. *Hardaway v. Withrow*, 147 F.Supp.2d 697, 711. Because there was evidence presented through petitioner's testimony that he acted in self-defense, and the evidence of malice in this case was not overwhelming, this Court concludes that the trial court's failure to instruct the jury on the defenses of self-defense and imperfect self-defense had a substantial and injurious effect or influence on the verdict and deprived petitioner of his rights to due process and a fair trial.

The Michigan Court of Appeals' failure to reverse petitioner's conviction, because

of the state trial court's failure to instruct the jury on petitioner's defenses of self-defense and imperfect self-defense was based upon an unreasonable application of clearly established federal law and an unreasonable determination of the facts in this case. Petitioner is entitled to the issuance of a writ of habeas corpus. Because this Court is granting petitioner the writ based upon these first two errors, this Court concludes that it is unnecessary to determine whether the petitioner would be entitled to habeas relief on his remaining two claims.

## IV. *ORDER*

**IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED. UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY (90) DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.**