RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0102P (6th Cir.)
File Name: 02a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ERIC W. TAYLOR,
    *Petitioner-Appellee,*

    *v.*

No. 01-1908

PAMELA WITHROW,
    *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-72292—Arthur J. Tarnow, District Judge.

Argued: January 24, 2002

Decided and Filed: March 28, 2002

Before: MERRITT, BOGGS, and MOORE, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** William C. Campbell, OFFICE OF THE
ATTORNEY GENERAL, HABEAS CORPUS DIVISION,
Lansing, Michigan, for Appellant. Stuart G. Friedman,
Plymouth, Michigan, for Appellee. **ON BRIEF:** William C.
Campbell, OFFICE OF THE ATTORNEY GENERAL,
HABEAS CORPUS DIVISION, Lansing, Michigan, for

1

Appellant.   Stuart G. Friedman, Plymouth, Michigan, for Appellee.

MERRITT, J., delivered the opinion of the court, in which MOORE, J., joined.   BOGGS, J. (pp. 12-13), delivered a separate opinion concurring in the judgment of the court as expressed in Part II.D.

———————

**OPINION**

———————

MERRITT, Circuit Judge.   In this case the respondent, warden Pamela Withrow (hereafter "State"), appeals the district court's grant of a writ of habeas corpus to petitioner Eric Taylor, who was convicted of second-degree murder in Michigan in 1995.   The district court issued the writ after finding that the trial court had deprived Taylor of his right to due process when it refused to instruct the jury on the defenses of self-defense and imperfect self-defense.   For reasons set out below, we REVERSE the district court's grant of the writ.

### I.  Facts

The facts of the case are set out in the district court's decision, and we repeat only those necessary to sketch the relevant events.  *See Taylor v. Withrow*, 154 F.Supp.2d 1037, 1039-41 (E.D. Mich. 2001).

Early in the morning of December 4, 1993, Eric Taylor went to a party at a private home in Ann Arbor, Michigan.  At the party were a number of his acquaintances, including Shalonda Jones, who was the mother of his child, Steven Horgrow, and Michael Franklin.  All present were drinking alcohol and smoking marijuana.  Taylor brought a gun to the party.  While accounts of exactly what occurred at the party differ, all the witnesses agree that Taylor was angry at Jones and accused her of "messing around with" Horgrow.  After leaving the party for a few minutes, Taylor returned and

quarreled with Horgrow. Following a brief exchange, Horgrow challenged Taylor to a fight, and several of the men at the party attempted either to separate the two (their story) or join Horgrow's challenge to Taylor (Taylor's story). Taylor then pulled out his gun. The gun went off, firing one shot. Horgrow was killed by the shot, and after the bullet passed through him, it struck and severely injured Michael Franklin. Following the shooting all partygoers fled except for Taylor, who stayed and performed CPR on Horgrow.

At trial, Taylor was charged with (1) "open murder," a Michigan charge allowing the jury to find either first- or second-degree murder, (2) assault with intent to commit murder, (3) carrying a concealed weapon, and (4) possession of a firearm in the commission of a felony. He testified in his own defense that he brought the gun to the party because he believed Horgrow was armed, that he pulled the weapon only when he believed he was about to be attacked, and that he had not intended to fire the gun but that it accidentally went off in a scuffle. During trial Taylor's counsel stated that Taylor shot Horgrow by accident, and introduced evidence in an attempt to show that the gun could have accidentally discharged when grabbed. He also told the jury that Taylor had pulled the weapon to defend himself, and at *voir dire* counsel asked potential jurors whether they had a problem with self-defense as a defense.

At the close of trial the judge refused a defense request to instruct the jury on the defenses of self-defense and of imperfect self-defense, pointing out that Taylor had testified that he shot Horgrow accidentally and not in self-defense. It did not matter, the trial judge held, why Taylor initially pulled the gun; his testimony made it impossible for him to claim the shooting itself was done in self-defense. The trial judge did, however, instruct the jury on accident as a defense. The jury instructions also included the judge's admonition to disregard the trial lawyers' comments if they differed from the jury instructions. J.A. at 832-33. At closing Taylor's counsel chiefly argued accident as a defense for his client.

The jury convicted Taylor of second-degree murder, assault with intent to do great bodily harm, carrying a concealed weapon, and possession of a firearm in the commission of a felony.

Taylor appealed, claiming *inter alia* that he had been deprived of his rights under the Fifth and Sixth Amendments when the trial court refused to instruct the jury on self-defense and attempted self-defense. His conviction and sentence were affirmed by the Michigan Court of Appeals and his appeal was denied by the Michigan Supreme Court. *See People v. Taylor*, No. 187231 (Mich. Ct. App. July 18, 1997), *leave den.* 586 N.W.2d 743 (Mich. 1998), *reconsideration den.* 590 N.W.2d 65 (Mich. 1999).

Taylor then filed a petition for a writ of habeas corpus in the district court, asserting four different claims for relief, including that he was denied his right to a fair trial when the trial judge refused to instruct the jury on self-defense and on imperfect self-defense. *See Taylor*, 154 F.Supp.2d at 1039. The district court found that refusing to give the instructions on both defenses had violated Taylor's rights under the Fifth and Sixth Amendments, and further found that this error was not harmless. *See id*. at 1043-45. The court granted the writ, and the state timely appealed.[1]

## II.  Analysis

### A.  Standard of Review

In an appeal of a habeas proceeding, we customarily review the district court's legal conclusions *de novo*, and its factual findings for clear error. *See Miller v. Francis*, 269 F.3d 609,

---

[1]Taylor also claimed in his application for a writ that his rights were violated when (1) the trial court refused to let him present additional evidence of the victim's character, and (2) during jury deliberations, the trial judge took leave and was replaced by two other judges. *See Taylor*, 154 F.Supp.2d at 1040-41. Having granted the writ on the claims of improper jury instructions, the district court did not reach these additional claims, and they are not part of this appeal.

This principle does not mean that we can never interpret the contours of a clearly established Supreme Court precedent, nor that the Court must have ruled on exactly this same set of facts. However, to interpret clearly established precedent as resting primarily on "the statement of broad principles and standards," as our court states at page 9, would go too far. This is particularly true when our judgment is based on principles as broad as "our legal heritage" and "the right to present a meaningful defense." (Page 9). At a high enough level of generality, virtually any result can be derived from principles as broad as "due process" or "the rule of law." If AEDPA is to have any meaning, the phrase "clearly established precedent" must refer to results that logically follow from a Supreme Court decision, not simply holdings that are congruent with, or would be an appropriate extension of, such precedent.

I believe that the silence of the Supreme Court may not be construed as clearly established law sufficient to allow a federal court to reverse a state determination. To do so is to slip the constraints imposed by AEDPA, and allow speculation, even if wise speculation, based on what the Supreme Court has *not* held, to satisfy AEDPA. Given that the Supreme Court has inevitably *not* held far more than it has held, the exception proposed today would certainly open the door to undermining the AEDPA rule.

## CONCURRENCE

BOGGS, Circuit Judge, concurring.  I concur in the judgment of the court as expressed in Part II.D.  However, I am unable to concur in the court's holding, in Part II.C, that denial of a jury instruction on self-defense violates the United States Constitution as a matter of "clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1).  The opinion does not cite, and I have been unable to find, any Supreme Court case holding that the right to present a defense includes a right to specific jury instructions at all, much less an instruction on any particular ground on which the criminal defendant has offered sufficient evidence to support a jury verdict.

The opinion states that this proposition is a rare bird: a fundamental constitutional rule so unexceptional that it has never been drawn into question.  This is probably true; however, we are not free to make our own constitutional adjudication.[1]  We must find that this fundamental constitutional rule has been clearly established by Supreme Court precedent.  It has not been.[2]

---

[1] Were we not constrained by AEDPA, we might undertake our own constitutional analysis and find such a constitutional right.  For example, the cases cited to show that a  failure to grant a defense instruction is a constitutional violation rested on pre-AEDPA decisions by those circuits.  *See, e.g., Sloan v. Gramley*, 2000 WL 536164, at **3 (7th Cir. May 1, 2000), citing *Everette v. Roth*, 37 F.3d 257, 261 (7th Cir. 1994); *Clemons v. Delo*, 177 F.3d 680 (8th Cir. 1999), citing *United States v. Solem*, 646 F.2d 322, 328 (8th Cir. 1980).  Furthermore, these decisions are not Supreme Court precedent, and cannot have any impact whatsoever on our analysis.

[2] The court agrees, at page 8: "There is no Supreme Court decision unmistakably setting down this precise rule . . . ."; our inquiry should be ended at that point.

---

613 (6th Cir. 2001).  When the district court relies on a transcript from the petitioner's state trial and makes no independent determinations of fact, we review the district court's factual findings *de novo*, as well.  *See id*.

### B.  Habeas Standards and The Antiterrorism and Effective Death Penalty Act

Under rules set down in the Antiterrorism and Effective Death Penalty Act of 1996 (the "Antiterrorism Act" or "Act"), a federal court may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1) (1994 & Supp. VII), or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  *Id*. § 2254(d)(2).

The Act sets a higher hurdle for those seeking habeas than before, but it does not require that the Supreme Court must have previously decided the very case that a lower court has before it.  In *Williams v. Taylor*, the Supreme Court warned that  "clearly established Federal law, as determined by the Supreme Court" refers to Supreme Court decisions, not those of  lower federal courts, and "refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision."  529 U.S. 362, 412 (2000);  *see also Brumley v. Wingard*, 269 F.3d 629, 637-38 (6th Cir. 2001).  At the same time, clearly established law under the Act encompasses more than just bright-line rules laid down by the Court.  It also clearly includes legal principles and standards enunciated in the Court's decisions.  As the Court stated, a state court decision makes "an unreasonable application of this Court's precedent" when the court "unreasonably extends a legal principle from our precedent to a new context where it should not apply . . . " but, it is important to emphasize, the Court said at the same time that a lower court also errs when it "*unreasonably*

*refuses to extend that principle to a new context where it should apply.*" *Williams*, 529 U.S. at 407 (emphasis added).

The Supreme Court has warned lower federal court to be cautious in finding that a state court has decided "contrary to, or made an unreasonable application of" clearly established federal law. Under the Act, a state court's decision will be contrary to Supreme Court precedent only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a conclusion opposite to that reached by the Court. *Id*. at 405. Similarly restrictive is the Court's guidance on what constitutes an "unreasonable application" of federal law. It is not enough that a state court correctly identified a governing legal principle, but mistakenly applied it; a federal court should only issue a writ if the state court's application was "objectively unreasonable." *Id*. at 412.

### C. The right to jury instructions on self-defense

A threshold question in any habeas appeal is whether the petitioner makes his or her claim under a rule of law that was clearly established at the time the conviction became final in state court. *See Miller*, 269 F.3d at 614-15. To examine Taylor's claim, then, we must first determine whether he makes his claim under a valid rule of law, and only then turn to decide whether in his particular case that rule was violated.

Within broad limits the federal courts defer to states on most matters concerning how they regulate criminal trials. As the Supreme Court has noted, "preventing and dealing with crime is much more the business of the States than it is of the Federal Government," and federal courts should be reluctant to meddle in criminal procedures established for valid reasons by states. *Patterson v. New York*, 432 U.S. 197, 201 (1977). Thus, a state has broad leeway, for instance, to decide what relevant evidence a defendant may present in a state criminal trial. *See Montana v. Egelhoff*, 518 U.S. 39, 42-43 (1996). A state does not, however, have an unfettered right to run its

because these defenses were inconsistent with accident. The trial judge's stated reason for refusing to instruct the jury on self-defense was that he believed that defense was not supported by the evidence, and the Michigan Court of Appeals reached the same conclusion. *See Michigan v. Taylor*, No. 187231, slip op. at 1. Even assuming, however, that the trial judge did refuse to instruct the jury on both accident and self-defense because he believed they were incompatible, that alone would not justify a grant of habeas. Michigan law may well require a state court to let a defendant assert inconsistent defenses when supported by the evidence, *see People v. Mills*, 537 N.W.2d 909, 919-20 (Mich. 1995), and on occasion even federal courts might be required to offer instructions on inconsistent defenses when the evidence supports both instructions, *see Mathews*, 485 U.S. at 65-66. Not all states, however, follow this rule, *see* Milton Roberts, Annotation, *Accused's right, in homicide case, to have jury instructed as to both unintentional shooting and self-defense*, 15 A.L.R.4th 983 (1982), and the right to present inconsistent defenses is not so widespread or well-established as to be a fundamental rule essential for due process. *See Egelhoff*, 518 U.S. at 42-43. Whether the trial judge was right or not in his interpretation of Michigan law, his ruling did not so offend the fundamental principles of justice as to violate due process.

### III. Conclusion

For the reasons set out above we REVERSE the decision of the district court to grant the writ and REMAND for further proceedings consistent with this decision.

not met, and we are unable to find Michigan's evidentiary requirements on this subject to be unconstitutional.

Taylor did not testify that the shooting was pure self-defense. Instead, he depicted it as a mix of accident and self-defense. He initially pulled the gun, he testified, because he believed Horgrow was reaching for a weapon, but the shooting that followed was unintentional, for the gun went off accidentally. *See Taylor*, 154 F.Supp.2d at 1043. In other words, Taylor testified that he did not intentionally shoot Horgrow to defend himself, only that the shooting stemmed from a defensive act, the pulling of the gun.

Under Michigan law, however, "[a] finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally but that the circumstances justified his actions." *People v. Heflin*, 456 N.W.2d 10, 19 (Mich. 1990). Michigan does not allow a defendant to claim justified self-defense as a defense to homicide unless the defendant claims the killing was intentional. *See id*. This may or may not be an unwise rule, but states have great latitude in criminal proceedings, including latitude to formulate both the elements of crimes and the defenses to them. *See Egelhoff*, 518 U.S. at 43. While a rule that prevented a defendant from claiming self-defense under any circumstances might violate due process, we cannot find that Michigan's formulation of the self-defense rule is unconstitutional. There is no precedent for such a conclusion, and it certainly does not violate clearly established Supreme Court rules or standards.

In light of this, we must disagree with the district court's determination that the trial court acted unreasonably. We find that the state trial court's ruling that there was no evidence of justified self-defense, and its consequent refusal to instruct the jury on self-defense and imperfect self-defense, did not involve either an unreasonable determination of the facts or an unreasonable application of clearly established federal law.

Taylor also appears to claim that the trial court refused to instruct the jury on self-defense and imperfect self-defense

court proceedings in any manner at all. There are a few customs and principles "so rooted in the traditions and conscience of our people as to be ranked as fundamental," and depriving a defendant of one of these in a criminal trial is constitutional error. *Egelhoff*, 518 U.S. at 43 (quoting *Patterson*, 432 U.S. at 201-02).

We hold that the right of a defendant in a criminal trial to assert self-defense is one of those fundamental rights, and that failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause. It is indisputably federal law as announced by the Supreme Court that a defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *Harrington v. Jackson*, 2001 WL 45417, at **1 (6th Cir. January 10, 2001). A necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions.

The right to claim self-defense is deeply rooted in our traditions. *See Egelhoff*, 518 U.S. at 43 ("Our primary guide in determining whether the principle in question is fundamental is, of course, historical practice"). Blackstone referred to self-defense as "the primary law of nature," and claimed that "it is not, neither can it be in fact, taken away by the law of society." 3 William Blackstone, *Commentaries*, *4. According to him, the common law "held [self-defense] an excuse for breaches of the peace, nay even for homicide itself." *Id*.; *see also* 4 *id*. at *183-87. It is a well-established rule in federal criminal trials that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor," including the defense of self-defense. *Mathews v. United*

*States*, 485 U.S. 58, 63-64 (1988); *see also Stevenson v. United States*, 162 U.S. 313 (1896). Even in *Egelhoff*, a case taking a decidedly narrow view of which rights are "fundamental," the Court commented that "the right to have the jury consider self-defense evidence" may be a fundamental right. 518 U.S. at 56 (Scalia, J., plurality opinion). We know of no state that either currently or in the past has barred a criminal defendant from putting forward self-defense as a defense when supported by the evidence.

In finding that the right to claim self-defense is a fundamental right we break no new ground. Other Courts of Appeals have already reached the same conclusion. In a recent case Judge Easterbrook held that "[w]hen there is evidentiary support for a defendant's theory of self-defense, failure to instruct on self-defense violates a criminal defendant's Fifth and Sixth Amendment rights," *Sloan v. Gramley*, 2000 WL 536164, at **3 (7th Cir., May 1, 2000), and Judge Richard Arnold also recently found that a criminal defendant "is entitled to a self-defense instruction if there is evidence to support his theory," *Clemons v. Delo*, 177 F.3d 680, 685 (8th Cir. 1999). This Court has also already held, as have other Courts of Appeals, that in certain circumstances refusing to instruct a jury properly on self-defense can so taint the resulting verdict as to be an error of constitutional dimension. *See, e.g.*, *Davis v. Strack*, 270 F.3d 111, 116 (2d Cir. 2001); *Barker v. Yukins*, 199 F.3d 867, 872-73 (6th Cir. 1999), *cert. denied sub nom*, *Yukins v. Barker*, 530 U.S. 1229 (2000).

There is no Supreme Court decision unmistakably setting down this precise rule, though the holding in *Mathews* has been taken by some courts as setting out a right to a jury instruction on self-defense. *See, e.g.*, *Taylor*, 154 F.Supp.2d at 1043 (citing *Mathews*, 458 U.S. at 63, for the proposition that a defendant is entitled to an instruction on self-defense when there exists evidence to support it). The lack of an explicit statement to this effect is not determinative. The Court has made clear that its relevant precedents include not only bright-line rules but also the legal principles and

standards flowing from precedent. *See Williams*, 528 U.S. at 407. We believe that the rule that a defendant is under certain circumstances entitled to a self-defense instruction follows inescapably not only from our legal heritage but also from the Court's holding in *Trombetta* that a defendant has the right to present a meaningful defense. *See* 467 U.S. at 485. This is an example of a *rara avis*: a fundamental constitutional rule dictated by precedent but "so unexceptional that it [has] never been drawn into question in a reported case," at least a Supreme Court case. *Tyson v. Trigg*, 50 F.3d 436, 440 (7th Cir. 1995).

The rule proposed in the separate opinion of our colleague Judge Boggs — *i.e.*, that the Supreme Court must expressly and specifically have stated a new rule in order for us to apply it under the Antiterrorism Act — does not recognize that the Supreme Court acts more through the statement of broad principles and standards, as in *Williams* and *Mathews*, than through specific rules and holdings on the very facts in question. Many things are obvious and flow from general principles and our holding in this case is one of them. The earth is not flat, nor does the sun revolve around it, but we do not need to be told that expressly by the Supreme Court in order for us to apply it in a case. The rigid rule Judge Boggs proposes would overrule the court's statement in *Williams* that we must use our best judgment to "extend [a] principle to a new context where it should apply." 529 U.S. at 407.

### D. Petitioner's claim

Our next question is whether the trial court's refusal to instruct the jury on self-defense in this case violated this rule. We hold that it did not. The rule set out above does not give a defendant the right to offer any defense, nor to demand a jury be instructed on any theory. As set down in *Mathews*, the rule states that "a defendant is entitled to an instruction as to any recognized defense *for which there exists evidence sufficient for a reasonable jury to find in his favor*." 485 U.S. at 63-64 (emphasis added). Here, under Michigan law as interpreted by the state courts in this case, that condition was