RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0407P (6th Cir.)
File Name: 03a0407p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BILLY DEWAYNE NEWTON,
  *Petitioner-Appellee,*

  *v.*

GEORGE R. MILLION, Warden,
  *Respondent-Appellant.*

No. 01-6116

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 00-00075—Joseph M. Hood, District Judge.

Argued: May 6, 2003

Decided and Filed: November 17, 2003

Before: KRUPANSKY, SILER, and COLE, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Dennis W. Shepherd, OFFICE OF THE
ATTORNEY GENERAL, Frankfort, Kentucky, for
Appellant. David J. Guarnieri, JOHNSON, JUDY, TRUE &

GUARNIERI, Frankfort, Kentucky, for Appellee.
**ON BRIEF:** Courtney Jones Hightower, OFFICE OF THE
ATTORNEY GENERAL, Frankfort, Kentucky, for
Appellant. David J. Guarnieri, JOHNSON, JUDY, TRUE &
GUARNIERI, Frankfort, Kentucky, for Appellee.

SILER, J., delivered the opinion of the court, in which
KRUPANSKY, J., joined. COLE, J. (pp. 11-12), delivered a
separate dissenting opinion.

———————————

**OPINION**

———————————

SILER, Circuit Judge. The Commonwealth of Kentucky,
on behalf of the warden, appeals the district court's decision
to grant a conditional writ of habeas corpus to Billy Dewayne
Newton. Newton's petition alleges that the state trial court's
failure to instruct the jury on the defense of self-protection
against multiple aggressors violated his right to due process
under the Fifth and Fourteenth Amendments of the United
States Constitution. For the reasons that follow, we
**REVERSE** the district court's grant of the writ.

**BACKGROUND**

The charges against Newton arose out of an altercation that
took place on November 16, 1996. The following facts were
presented in the opinion of the Kentucky Supreme Court:

The victim [William Hutcherson] and Newton had their
first confrontation early in the afternoon. Later that day,
in a billiard room parking lot, the victim and Newton
started fighting after a minor automobile collision
involving vehicles of friends. The victim and Newton
scuffled on the ground, and the victim was stabbed
several times in the lower left chest, on the right upper
abdomen and the fatal wound was on his upper right

thigh, near the groin area. A third person tried unsuccessfully to break up the fight. The leg wound was 3 inches deep and it cut both the femoral artery and the vein, severing them completely. The fatal leg wound was discovered by the EMS worker in the ambulance on the way to the hospital. The victim was pronounced dead at 11:15 p.m. Newton left the scene but was soon apprehended. Newton was arrested and charged with murder, and the knife used to stab the victim was recovered.

*Newton v. Commonwealth*, No. 98-SC-0014-MR, slip op. at 2-5 (Ky. Dec. 16, 1999) (unpublished).

At trial, Newton testified that he believed Hutcherson was armed. He also told the jury that Jamey Woolums did not try to break up the fight but instead joined in Hutcherson's attack. As a consequence, he began stabbing randomly in the air to protect himself against both men. The trial court instructed the jury on self-defense, but did not instruct the jury concerning the defense against multiple aggressors.[1] In December 1997, Newton was convicted of murder and was sentenced to forty years in prison.

Newton appealed to the Kentucky Supreme Court. He claimed that the trial judge was required to instruct the jury

---

[1]The jury instruction was as follows:

Even though the Defendant might otherwise be guilty of Murder under Instruction No. 5, or Manslaughter in the First Degree under Instruction No. 6, if at the time the Defendant killed William Hutcherson, he believed that William Hutcherson was then and there about to use physical force upon him, he was privileged to use such physical force against William Hutcherson as he believed to be necessary in order to protect himself against it, but including the right to use deadly physical force in so doing only if he believed it to be necessary in order to protect himself from death or serious physical injury at the hands of William Hutcherson.

that he had a right to defend himself against both Hutcherson and Woolums since they were multiple aggressors acting in concert. In an unpublished opinion, the Supreme Court of Kentucky affirmed Newton's conviction and sentence. It noted that Woolums kicked Newton at least twice during the scuffle, but concluded that the trial court's refusal to give a multiple aggressor instruction was not error under the factual circumstances of the case.

Later, Newton filed a petition for habeas corpus relief, raising four issues, including his claim regarding the multiple aggressor self-protection instruction. The magistrate judge recommended that the petition be dismissed for procedural default. The magistrate judge reasoned that Newton failed to apprise the state court of the federal constitutional nature of his claim. Alternatively, the magistrate judge recommended that the petition be dismissed on grounds that Newton failed to establish that the allegedly improper jury instructions resulted in a clear violation of due process.

The district court dismissed three of Newton's claims with prejudice but determined that his jury instruction claim was not procedurally barred. In ruling on this claim, the district court determined that the Kentucky Supreme Court's factual findings were not fairly supported by the record. The district court cited the above-quoted portion of the Kentucky Supreme Court decision as evidence that it misconstrued Woolums's behavior as an attempt to "break up the fight."[2] Because Woolums participated in the fight, the district court concluded that the trial court should have provided a multiple aggressor jury instruction and its failure to do so violated Newton's right to due process. As a consequence, the district court granted the writ.

---

[2]The Kentucky Supreme Court inconsistently characterized Woolums's behavior during the scuffle. At one point in the opinion, the court states that a third individual, presumably Woolums, attempted to break up the fight. At a later point in the discussion, however, the court acknowledges testimony that Woolums also kicked Newton.

## DISCUSSION

### A. Procedural Default

As an initial matter, the Commonwealth challenges the district court's finding that Newton "fairly presented" his federal claim to the state court. It maintains that Newton committed procedural default, arguing that he made only a vague reference to the Fifth and Fourteenth Amendment and failed to cite federal or state cases that employ federal constitutional analysis. The fact that the Kentucky Supreme Court failed to engage in federal constitutional analysis, the Commonwealth contends, is further evidence that Newton failed to apprise the state court of the nature of his claim.

Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not "fairly presented" to the state courts. A claim may only be considered "fairly presented" if the petitioner asserted both a factual and legal basis for his claim in state court. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Although general allegations of the denial of a "fair trial" or "due process" have been held insufficient to "fairly present" federal constitutional claims, *id.* at 681, a petitioner need not recite "book and verse on the federal constitution." *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)).

A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *McMeans*, 228 F.3d at 681 (citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987)).

Newton's brief in the Kentucky Supreme Court provided a detailed recitation of the facts and specifically stated that the trial court's refusal to instruct the jury on the issue of self-protection against multiple aggressors "violated [his] right to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution." This is sufficient to have fairly presented the federal nature of his claim to the state court. There is no requirement that the petitioner cite to cases that employ federal constitutional analysis where he has phrased his claim in terms of a denial of a specific constitutional right. *See Carter v. Bell*, 218 F.3d 581, 606-07 (6th Cir. 2000) (holding that the habeas petitioner fairly presented his claim in his state post-conviction petitions by stating that the statute at issue failed to narrow the class of persons eligible for death penalty in violation of his Eighth Amendment rights). Moreover, the fact that the Supreme Court of Kentucky neglected Newton's federal claim does not deprive this court of jurisdiction. *See Koontz*, 731 F.2d at 368 ("[T]he exhaustion requirement 'cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely presented in petitioner's brief in state court.'") (citations omitted).

### B. Standard of Review

"This court applies de novo review to the decision of the district court in a habeas corpus proceeding." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (citing *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000)). Newton filed his federal habeas corpus petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified principally at 28 U.S.C. § 2254(d). Pursuant to this provision, a federal court may grant Newton's writ of habeas corpus only if the Kentucky court's judgment

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

By its very language, 28 U.S.C. § 2254(d) "is applicable only to habeas claims that were 'adjudicated on the merits in State court . . .'" *Maples*, 340 F.3d at 436. In the case *sub judice*, as the state court "did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply." *Id.* at 436 (citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001)) (applying pre-AEDPA standards to a habeas petition filed pursuant to § 2254 because "no state court reviewed the merits of [the] claim"). Accordingly, the AEDPA standard is inapplicable, as this court "reviews questions of law and mixed questions of law and fact de novo." *Maples*, 340 F.3d at 436 (citing *Williams,* 260 F.3d at 706).

## C. Petitioner's Habeas Claim

Newton contends that his right to due process under the Fifth and Fourteenth Amendments was violated when the trial court refused to give a multiple aggressor qualification in the jury instruction. Specifically, he argues that the trial court denied him a meaningful opportunity to put forth a complete defense based on his theory of self-defense–that he stabbed randomly in the air because he believed it was necessary to protect himself against the concerted actions of Hutcherson and Woolums.

The Supreme Court has interpreted the due process clause to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. *See California v. Trombetta*, 467 U.S. 479, 485 (1984). In keeping with this principle, it has ruled that a defendant is entitled to an affirmative defense instruction even though it may be inconsistent with other portions of his requested jury instructions. In *Stevenson v. United States*, 162 U.S. 313

(1896), the Court reversed a murder conviction arising out of a gunfight. The defendant had requested that the trial court give both a manslaughter and a self-defense instruction. Although self-defense may be inconsistent with the charge of manslaughter, the Court recognized that a full defense necessitated both instructions. Similarly, in *United States v. Mathews*, 485 U.S. 58, 63-64 (1988), the Supreme Court held that even if a defendant denies one or more elements of the crime, he is entitled to an affirmative defense instruction whenever there is sufficient evidence from which a reasonable jury could find for him on this issue.

In dictum, we have interpreted *Mathews* as establishing a rule that "'a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor[.]'" *See Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002) (quoting *Mathews*, 485 U.S. at 63-64). Specifically, in *Taylor* this court stated that, in certain circumstances, "failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause." *Taylor*, 288 F.3d at 851. We reasoned that "the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *Id.* at 852. Nevertheless, it was dictum, because we held that if that was the law, the petitioner's conduct did not warrant such an instruction on self-defense.

Unlike the defendant in *Taylor*, however, Newton's claim does not rest on the court's denial of a self-defense instruction. Rather, he challenges the specific content of the instruction, namely the omission of Woolums's name.

Newton argues that his case is analogous to *Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999). In *Barker*, this circuit held that a trial court's failure to give a self-defense instruction that specifically stated that the defendant was justified in using deadly force to repel a rape under Michigan

law violated the petitioner's due process right to put forth a complete defense and rendered the trial fundamentally unfair.[3] We reasoned that, under the instructions given, the jury could have found the petitioner's testimony to be credible but still have convicted her of murder under the mistaken belief that a sexual assault does not rise to the level of death or great bodily harm under the law. *Id.* In our case, the court instructed the jury on self-defense. Newton's complaint is that it did not include multiple offenders.

We have found no Supreme Court case which holds that a criminal defendant's right to present a defense includes the right to a specific jury instruction, particularly one that goes beyond a general affirmative defense. Nor do we believe that the omission of Woolums's name violated Newton's right to present a defense or resulted in an error of a constitutional dimension. *See Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000) ("To warrant habeas relief because of incorrect jury instructions, a Petitioner must show that the instructions,

---

[3]This court also held that the Michigan Supreme Court violated the due process clause and the Sixth Amendment when it determined that no reasonable juror could have found the petitioner acted to protect herself from being raped. *Id.* at 875-76. In this court's view, the evidence supported a finding of self-defense, and by reaching the conclusion that no juror would have believed the petitioner's defense, the Michigan Supreme Court necessarily believed some of the evidence but discredited other evidence. *Id.* By impermissibly weighing the evidence, the Michigan Supreme Court exceeded the scope of its authority and improperly invaded the province of the jury, which is prohibited by the due process clause and the Sixth Amendment. *Id.*

Newton makes an analogous claim that the trial judge improperly invaded the province of the jury by making factual determinations that should have been properly delegated to the jury. Newton's claim misconstrues our holding in *Barker*. In *Barker*, the Michigan Supreme Court evaluated the facts presented and discredited evidence proffered on behalf of the petitioner. Here, the judge determined that there was insufficient evidence to support the requested jury instruction. There is no evidence to suggest that the trial judge disbelieved Newton's testimony and the evidence he presented.

as a whole, were so infirm that they rendered the entire trial fundamentally unfair."). The jury was instructed on self-defense under the law of Kentucky. The nature of the particular instruction given is a matter of state law, and we are not at liberty to grant a writ of habeas corpus simply because we find the state court's decision was incorrect under state law. *See Williams v. Taylor*, 529 U.S. 362, 411 (2000) (O'Connor, J., concurring).

**REVERSED.**

---

**DISSENT**

---

R. GUY COLE, JR., Circuit Judge. There is no dispute that: (1) the Due Process Clause requires that a criminal defendant be provided "a meaningful opportunity to present a *complete* defense"; (2) that this right compels the trial court to instruct the jury as to all relevant defenses, *Taylor v. Withrow*, 288 F.3d 846, 582 (6th Cir. 2002); (3) that Kentucky law permitted Newton to defend himself against multiple aggressors; (4) that Newton presented evidence at trial that there was more than one person attacking him; and (5) that the trial court's instructions to the jury permitted it to find that Newton acted in self-defense only if he "believed that William Hutcherson was then and there about to use physical force upon him, he was privileged to use such physical force against William Hutcherson as he believed to be necessary in order to protect himself against it."

It thus becomes clear that contrary to the majority's assertions, the problem was not that the instruction to the jury was too general – the problem was that it was too specific. Had the trial court instructed the jury simply that "the defendant has a right to protect himself against the threat of physical force" – a general instruction that nonetheless would not foreclose the jury from considering Newton's self-defense claim – I might agree with the majority. But the instruction that was actually given to the jury took off the table any claims of defense that did not involve both: (1) Newton's belief that Hutcherson was about to use physical force against him; and (2) an attempt to protect himself from physical force at the hands of Hutcherson. As a result of this instruction, a jury could have found that Newton was reasonably defending himself against multiple attackers yet still felt compelled to convict Newton of murder – a result that would be plainly contrary to the law under which Newton was tried.

In this respect the instruction at issue was more problematic than the one that we found to violate due process in *Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999). In that case, we held that due process mandated the reversal of a defendant's murder conviction because the instruction to the jury – although broadly recognizing the right to use deadly force when facing the danger of death or serious bodily harm – did not specifically instruct the jury that the use of deadly force was lawful in order to prevent a sexual assault. *Id.* at 871 - 73. We so held notwithstanding the fact that the instruction that was given to the jury was reasonably read as including the right to defend oneself against a sexual assault, and we did so even under a far more deferential standard of review than the *de novo* review which we must undertake here. *See id.* at 871 (applying AEDPA's deferential standard of review). Given, then, that we have held it is an unreasonable application of clearly established federal due process law to issue an instruction to the jury that is simply too broad, our precedent leaves us no choice but to hold, on a *de novo* review, that an instruction that actually *precludes* the jury from evaluating Newton's self-defense claim also violates due process.

Nevertheless, the majority rejects Newton's due process claim because, according to the majority, Newton challenges not the omission of a self-defense instruction, but rather the specific content of the instruction. Under the majority's view, then, an instruction which stated that "Newton is entitled to an acquittal if he acted in self defense provided that he was defending himself against a man wearing a blue jacket," would comport with due process. As this example illustrates, however, the mere inclusion of an instruction – no matter how much it nullifies the arguments that the law entitles the defendant to make – is insufficient to pass constitutional muster. That this violation came in the form of an erroneous, rather than omitted instruction, is wholly irrelevant. Accordingly, I respectfully dissent.