KAREN NELSON MOORE, Circuit Judge,
concurring in the judgment only.
I agree that habeas relief is unwarranted under these circumstances. I do not agree, however, with the plurality’s explanation of why the district court erred in granting habeas relief in this case.
Clearly established federal law requires that when excluding evidence offered by a criminal defendant, the trial court must balance the interests of the state in excluding the evidence with the infringement upon the weighty interests of the defendant in presenting a complete defense. “Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.” Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 *521 L.Ed.2d 686 (1986) (internal citations and quotation marks omitted). However, the exclusion of evidence pursuant to evidentiary rules “do[es] not abridge an accused’s right to present a defense so long as [the rules] are not ‘arbitrary’ or ‘disproportionate to the purposes they are designed to serve’ ” and thus do not “infringe[ ] upon a weighty interest of the accused.” United States v. Scheffer, 528 U.S. 308, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (quoting Rock v. Arkansas, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). Rape-shield statutes represent legitimate state interests and may, in some circumstances, preclude the admission of evidence relating to a prior sexual relationship between a victim and a defendant. Michigan v. Lucas, 500 U.S. 145, 152-53, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991).
The plurality starts off on the right track, correctly explaining that a “trial court must balance a state’s interest in excluding certain evidence under the rape shield statute against a defendant’s constitutionally protected interest in admitting that evidence, on a case-by-case basis.” Plur. Op. at 514. But the plurality then makes no effort to analyze whether the state court reasonably conducted that balancing in Gagne’s case. Instead, the plurality concludes that because the Supreme Court has not explicitly held that “highly probative evidence” could ever outweigh the state’s interest in a rape-shield statute, the state court’s identification of the state’s interest in a rape-shield statute alone justifies the exclusion of all related evidence. Id. at 516. Even when that evidence is purportedly the “most relevant piece of evidence” to a defense, the plurality’s approach would presumptively call a state-court decision excluding such evidence reasonable simply if the state court identified a rape-shield statute as the reason behind the exclusion. Id. at 516-17. This is not a correct basis for concluding that the Michigan Court of Appeals in this case — or in any case — did not unreasonably apply clearly established federal law.
The plurality’s error flows in part from its misinterpretation of the principle that state courts are entitled to more leeway in the application of “general principles” than they are specific constitutional rules. Plur. Op. at 514.[1] The plurality implies that this leeway creates an insurmountable hurdle for defendants seeking habeas relief based on the unreasonable application of general principles. This is not so. The extent to which clearly established law “‘requires a case-by-case examination of the evidence,’ ... obviates neither the clarity of the rule nor the extent to which the rule must be seen as ‘established.’ ” Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); see Lockyer v. Andrade, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (reviewing on habeas the application of a “proportionality principle — the ‘precise contours’ of which ‘are unclear’ ”). Clearly established law “encompasses more than just bright-line rules laid down by the Court,” Taylor v. Withrow, 288 F.3d 846, 850 (6th Cir.2002), and a lower court errs when it “unreasonably refuses to extend that principle to a new context where it should apply,” Williams, 529 U.S. at 407, 120 S.Ct. 1495.
Gagne is not entitled to habeas relief because the Michigan Court of Appeals did not unreasonably apply the clearly estab *522 lished constitutional principles discussed above to the excluded evidence in this case. An examination of the last reasoned state-court decision reveals a not-unreasonable weighing of the probative value of the excluded evidence against the state’s interest in its rape-shield statute, resulting in exclusion that was neither arbitrary nor disproportionate. See People v. Swathwood, Nos. 235540, 235541, 2003 WL 1880143, at *3 (Mich.Ct.App. Apr. 15, 2003) (unpublished opinion). In many ways, the dissent by Judge Kethledge has the better exposition of the general constitutional principles at issue in this case and how they should be considered on habeas. But the dissent, too, errs by grossly exaggerating the application of these principles to the facts of this case in assessing the reasonableness of the state court’s application of these principles. I do not agree with the dissent that the evidence excluded from Gagne’s trial was “indispensable.” Dissent Op. at 535. Nor would I categorize the state’s interest in this case as “minimal.” Id. At a minimum, reasonable minds could readily differ on these issues, making habeas relief inappropriate.
The dissent of Judge Kethledge boldly claims that “[t]he only evidence with which Gagne could realistically defend himself ... was the evidence that the trial court excluded.” Dissent Op. at 534. I do not find the excluded evidence so compelling. The dissent relies heavily on the defense counsel’s proffer that the Bermudez incident was “nearly identical” to the charged events to then conclude that the Bermudez incident was “nearly identical brutal sex.” Dissent Op. at 533, 536 (emphasis added). This is a significant overstatement of the proffer. Defense counsel told the court that “the events alleged by [Bermudez] is nearly identical in most regards. There are some exceptions, but the general M.O., if you will, the way that event took place is almost identical to the way that the events charged in this case took place.” R. 11-2 (1/2/01 State Hr’g Tr. at 19). At no point did defense counsel, either in his papers or at the hearing, characterize the Bermudez incident as “brutal” or “violent” in any way, and the defense certainly did not proffer that the Bermudez incident left the victim bleeding and with bruises all over her body.[2] R. 11-2 (1/2/01 State Hr’g Tr. at 18-19); R. 23-4 (Def.’s Mot. and Offer of Proof at ¶ 4).
The dissent also suggests that the Bermudez incident and the alleged offer regarding Gagne’s father were necessary to establish that the victim was willing to consent to simultaneous sex with more than one person. This is another overstatement. Although the admitted testimony regarding the Tony’s Lounge incident did not involve simultaneous sex with two men, the incident involved allegations that the victim engaged in sexual acts in a group setting with both Gagne and Swath-wood. To the extent that any prior sexual conduct by the victim could bear on her consent in the instant offense without resting purely on an inappropriate propensity argument, the Tony’s Lounge incident arguably had greater probative value than either of the excluded encounters in that it involved group sexual activity with the two men she accused of rape. The excluded evidence was not so probative of consent in *523 the instant offense as to render its exclusion a violation of Gagne’s rights, particularly because the trial court did permit similar testimony relating to the victim’s history. It was certainly not unreasonable for the state court to conclude as much.
On the other side of the balancing test, the state’s interest in this case is particularly compelling. The state has a valid interest “in encouraging rape victims to come forward and in protecting victims from an embarrassing display of their past sexual history regardless of whether that history includes socially acceptable sexual practices.” Resp. Supp. Br. at 11; see also Lucas, 500 U.S. at 149-50, 111 S.Ct. 1748 (“The Michigan [rape-shield] statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy.”). The state also has an interest in preventing irrelevant character evidence in the form of a victim’s sexual history from misleading or prejudicing a jury when considering a victim’s testimony relating to the charged events. I do not agree with the dissent’s view that the state’s interest in excluding evidence under a rape-shield statute in this case was “minimal.” Dissent Op. at 535, 536. The state’s interests are not eviscerated just because a trial court has admitted some evidence of a victim’s past sexual practices, as the dissent seems to suggest. Dissent Op. at 534-35.
The dissent’s efforts to analogize the enforcement of the state rape-shield statute in this case with the state rules arbitrarily enforced in Chambers and Crane inappropriately minimizes the state’s interest in shielding rape victims and in preventing irrelevant character evidence from biasing a jury. In Crane, the state had not “advanced any rational justification for the wholesale exclusion” of evidence relating to the circumstances surrounding a confession when doing so undoubtedly infringed on weighty interests of the defendant. Crane, 476 U.S. at 691, 106 S.Ct. 2142. In Chambers, the state had a discernible interest in the rule in question— hearsay generally may be excluded to insure fairness and reliability — but the Supreme Court held that “the hearsay rule may not be applied mechanistically to defeat the ends of justice,” particularly when the excluded testimony had other indicia of reliability that would protect the state’s interests in a fair proceeding. Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Neither case is truly comparable to the state’s interest in excluding evidence in this case.
When a state court mechanistically applies a rape-shield statute to exclude indispensable evidence of a victim’s sexual history, habeas relief may be warranted. That situation, however, is not before us today. The Michigan Court of Appeals properly stated the relevant constitutional principles and conducted a reasonable review of the trial court’s evidentiary rulings in light of these constitutional principles. Swathwood, 2003 WL 1880143, at *1 (acknowledging need to balance interests protected by rape-shield statute with defendant’s right to confrontation). The Michigan Court of Appeals considered the probative value of the excluded evidence and concluded that the trial court did not err in excluding some, but not all, of the victim’s past sexual conduct. Id. at *3. The added probative value of the excluded evidence was indeed questionable, and the state court’s application of the rape-shield statute was neither arbitrary nor disproportionate to the state’s interests in exclusion in this case. Even assuming that it was a close question whether the excluded evidence should have been admitted, the state court’s decision upon balancing these interests was not unreasonable. I there *524 fore concur in the judgment reversing the district court.

. The plurality’s error also rests on its excessive reliance on Michigan Supreme Court opinions. The plurality suggests, without support, that because the Michigan Supreme Court routinely excludes purportedly highly relevant evidence under the Michigan rape-shield statute, the Michigan Court of Appeals opinion could not have unreasonably excluded the proffered evidence in Gagne's case. Plur. Op. at 516-18.

. Defense counsel also never proffered that the Bermudez incident involved the use of "a whip” and a "blue champagne bottle” as the dissent implies. Dissent Op. at 533. The proffer with respect to those items was that "it was common practice” for the victim and Gagne to use such items during their consensual sexual encounters. R. 23-4 (Def.’s Mot. and Offer of Proof at ¶ 4). The trial court specifically allowed the victim to be questioned regarding the use of such objects; the victim admitted to the consensual use of a whip but denied ever using a wine bottle.